A06A0099. BUTLER v. THE STATE.
(625 SE2d 458)

BLACKBURN, Presiding Judge.

Following a jury trial, Mack Butler appeals his conviction for selling cocaine, contending inter alia that the court erred in having Butler stand before the jury for identification and that his life without parole sentence was unconstitutional. We hold that standing before the jury did not violate Butler's state constitutional right against self-incrimination and that his recidivist sentence of life without parole, which was based on his three prior convictions for selling cocaine, was constitutional. Discerning no error, we affirm.

Construed in favor of the verdict, *Short v. State*,[1] the evidence shows that in 1994 Butler sold cocaine to an undercover officer, which transaction was recorded on videotape. Another officer, who had known Butler for years, recognized Butler from the video. When police sought to arrest Butler soon thereafter in a "roundup" of local drug offenders, he was already incarcerated elsewhere for a different crime and thus he was not arrested until February 1995 (after he had been released from the other incarceration and turned himself in).

Charged with selling cocaine, Butler was notified of the State's intent to seek punishment under OCGA § 17-10-7 (c) based on Butler's three prior convictions for selling cocaine. A jury trial ensued in March 1996, resulting in a guilty verdict and a sentence of life in prison without parole. Butler's trial counsel moved for a new trial, which his later-appointed appellate counsel amended to include a claim of ineffective assistance of counsel. Following a hearing on the

---

[10] *Huntley v. State*, 271 Ga. 227, 230 (3) (518 SE2d 890) (1999) (footnote omitted).
[1] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

motion, at which Butler's trial counsel testified, the trial court denied the motion in June 1997. No appeal was filed.

Eight years later, new appellate counsel appeared on behalf of Butler and successfully moved for an out-of-time appeal. This appeal followed.

1. Three of Butler's enumerations of error hinge on his claim that the court erred in complying with a juror's request that Butler briefly stand before the jury before they watched the video of the drug transaction a second time. Butler contends that in doing so, the court (i) in effect commented on the evidence in violation of OCGA § 17-8-57 and improperly allowed a juror to ask questions of Butler and (ii) violated his right against self-incrimination as guaranteed under the Georgia Constitution. We disagree.

(a) *Court Did Not Comment On The Evidence.* The relevant portion of the transcript reads:

> THE COURT: Mr. Ellis [prosecutor], I'd like to see the tape again.
> MR. ELLIS: Certainly.
> THE COURT: Any objection, Ms. Neal [defense counsel]?
> MS. NEAL: Well, Your Honor, I hate to object to His Honor.
> THE COURT: Ma'am?
> MS. NEAL: I said I hate to object to anything that His Honor asks.
> THE COURT: All right. Let's play it again. I'd ask Mr. Butler to stand up.
> MS. NEAL: Certainly.
> THE COURT: One of the jurors requested that Mr. Butler stand up.
> MS. NEAL: Sure. Come on, Mack, stand up. Do you want him to walk over —
> JUROR: Yeah. I'd like to see him out here.
> MS. NEAL: Mack, come here. Walk this way.
> THE COURT: Stand over here, Mr. Butler.
> (DEFENDANT COMPLIES)
> JUROR: Can I get a profile?
> MS. NEAL: Yes, ma'am.
> (DEFENDANT COMPLIES)
> THE COURT: Have a seat.
> (PLAYING OF THE VIDEOTAPE BEGINS)

None of the court's actions expressed or intimated its opinion as to what had or had not been proved or as to Butler's guilt, as prohibited by OCGA § 17-8-57. Nor did the juror direct any questions

to the defendant. Cf. *Hall v. State*[2] ("jurors are not permitted during trial to interrogate witnesses"). Rather, in asking Butler to stand, the court was merely agreeing to a juror's request to see Butler more clearly, a request within the court's discretion in the furtherance of the truth. See *Ashley v. State*[3] (trial court has the right in its discretion "to develop fully the truth of a case"). As Butler was present at trial, the jurors were able to see him at other times, and merely having him stand at the express request of a juror was likely redundant and simply facilitated the jury's ability to compare his visage to that contained in the videotape (and, indeed, may have been exculpatory). Just as "[a] witness has a right to view the accused, by having him stand up, so that he may be positive in his identification[,]" *Meriwether v. State*,[4] so a juror has the same right when comparing defendant's visage to a videotape image. See *Ragland v. State*[5] ("the jurors were able to compare the picture on the videotape to their own observation of [defendant] at trial").

(b) *No Violation Of Right Against Self-Incrimination*. Nor did such violate Butler's right under the Georgia Constitution against self-incrimination. The relevant provision states: "No person shall be compelled to give testimony tending in any manner to be self-incriminating."[6] Interpreting this provision, *Creamer v. State*[7] reiterated that the Georgia Constitution accords broader rights than the United States Constitution in that the Georgia constitutional guarantee against self-incrimination "protects one from being compelled to furnish evidence against himself, either in the form of oral confessions or incriminating admissions of an involuntary character, or of *doing an act* against his will which is incriminating in its nature." (Punctuation omitted; emphasis in original.) Id. at 516-517 (3). *Creamer* distinguished acts in which the defendant is forced to submit his body for the purpose of having evidence removed or having his body displayed (which acts are constitutional) from acts in which the defendant is forced to remove or produce the evidence himself (which acts are unconstitutional). Id. at 517-518 (3). Compare *Ingram v. State*[8] (requiring defendant to strip to his waist and be photographed to show tattoos on his body did not violate Georgia Consti-

---

[2] *Hall v. State*, 241 Ga. 252, 256 (4) (244 SE2d 833) (1978).

[3] *Ashley v. State*, 263 Ga. 820, 822 (3) (a) (439 SE2d 914) (1994).

[4] *Meriwether v. State*, 63 Ga. App. 667, 671 (2) (11 SE2d 816) (1940), disapproved on other grounds, *Felker v. State*, 252 Ga. 351, 366 (2) (a) (314 SE2d 621) (1984).

[5] *Ragland v. State*, 238 Ga. App. 664, 667 (519 SE2d 757) (1999).

[6] Ga. Const. 1983, Art. I, Sec. I, Par. XVI.

[7] *Creamer v. State*, 229 Ga. 511, 515-518 (3) (192 SE2d 350) (1972).

[8] *Ingram v. State*, 253 Ga. 622, 634 (7) (323 SE2d 801) (1984).

tution) and *Scott v. State*[9] (requiring defendant to display scar for photographing did not violate Georgia Constitution) with *Day v. State*[10] (forcing defendant to place foot into tracks near crime scene was unconstitutional) and *Aldrich v. State*[11] (requiring defendant to drive truck upon scales was unconstitutional).

*Creamer* summarized that the State may legally require the defendant "to submit so that evidence may be produced *from him*, but he is only required to be present and the evidence is adduced by those fingerprinting, photographing or identifying him." (Emphasis in original.) *Creamer*, supra at 517 (3). Based on a similar analysis, *Meriwether*, supra at 671 (2), concluded that under the Georgia Constitution, "[d]irecting defendant to stand up for identification is not compelling him to be a witness against himself." (Punctuation omitted.) Compare *Blackwell v. State*[12] (requiring defendant to show amputated leg so that witness, who could not remember how much of the perpetrator's leg was cut off, could fill in the gap and testify that perpetrator's leg was cut off below the knee, was unconstitutional). Accordingly, Butler's rights under the Georgia Constitution were not violated by having him stand before the jury for identification purposes.

2. Butler argues in four enumerations of error that he received ineffective assistance of counsel in that his trial counsel failed to make various objections. However, no transcript of the hearing on the issue was included in the appellate record, and we have ascertained that the hearing was not recorded. As in *Sorrells v. State*:[13]

> In order to show he was denied the constitutional right to counsel, [Butler] must show that his trial counsel's actions fell below an objective standard of reasonableness and that, but for the alleged ineffective act, there is a reasonable probability that the result of the proceeding would have been different. The record shows that this issue was raised in a timely fashion in the amended motion for new trial filed by [Butler's] appellate counsel. The record further shows that the amended motion for new trial was denied after a hearing. However, no transcript of the hearing on the amended motion for new trial has been included in the record on appeal. Accordingly, we must presume that [Butler] failed to meet his burden of proving the ineffectiveness of his trial

---

[9] *Scott v. State*, 274 Ga. 476, 478 (2) (b) (554 SE2d 488) (2001).

[10] *Day v. State*, 63 Ga. 668 (2) (1879).

[11] *Aldrich v. State*, 220 Ga. 132, 133-134 (137 SE2d 463) (1964).

[12] *Blackwell v. State*, 67 Ga. 76, 78-79 (1) (1881).

[13] *Sorrells v. State*, 267 Ga. 236, 241 (9) (476 SE2d 571) (1996).

counsel and that the trial court correctly denied the motion for new trial on this ground.

(Citations and punctuation omitted.) See *Johnson v. State*;[14] *Gentry v. State*.[15]

Moreover, even if we were to consider the issues raised, each of the objections that Butler claims his trial counsel should have made would have been without merit. "Failure to make a meritless objection cannot be evidence of ineffective assistance." *Hayes v. State*.[16] As shown above, objecting to Butler's standing before the jury would have been futile. Butler's next argument that his counsel should have objected to a passing reference to his incarceration as the reason for his not being arrested sooner and to the initial arrest as being part of a "roundup" similarly fails. "It is well settled that all of the circumstances connected with an accused's arrest are admissible as evidence at trial, even those that establish the commission of another criminal offense. The circumstances need only be shown to be relevant." (Citation and punctuation omitted.) *Davis v. State*.[17] Here, this testimony was relevant to counter any accusation that Butler's arrest was delayed due to lack of identification.

Butler then contends that his trial counsel should have objected to the court's jury instruction that (he claims) confused the jury by charging them on the entire definition of what constituted a violation of OCGA § 16-13-30 at that time. This definition included manufacturing, possessing, having under his control, prescribing, dispensing, administering, selling, or possessing cocaine with the intent to distribute, even though Butler was only charged with selling cocaine. However, the record clearly reflects that there was no confusion as to what the jury had to find to convict Butler. The indictment which the court read to the jury during its jury instructions charged Butler with selling cocaine; the court instructed the jury that the State had to prove every material allegation of the indictment; the court repeatedly instructed the jury that they had to find Butler sold cocaine to render a guilty verdict; and the jury verdict form itself gave the jury only the options of finding Butler guilty or not guilty of "the offense of the Sale of Cocaine." Any objection to this jury charge would have been futile. See *Arnold v. State*.[18]

3. Butler argues that his first appellate counsel was ineffective in that this counsel failed "to raise the issue of effectiveness of trial

---

[14] *Johnson v. State*, 270 Ga. 234, 239-240 (7) (507 SE2d 737) (1998).

[15] *Gentry v. State*, 263 Ga. App. 21 (587 SE2d 186) (2003).

[16] *Hayes v. State*, 262 Ga. 881, 884-885 (3) (c) (426 SE2d 886) (1993).

[17] *Davis v. State*, 275 Ga. App. 714, 719 (3) (c) (621 SE2d 818) (2005).

[18] *Arnold v. State*, 271 Ga. 780, 782 (523 SE2d 14) (1999).

counsel at the motion for new trial." The record belies this assertion. Such was raised in the amended motion for new trial and in appellate counsel's supporting brief and was discussed in the order denying the motion.

4. Butler challenges his sentence on three grounds. First, he contends that the court erred in considering his three prior sale-of-cocaine convictions as three separate convictions for purposes of OCGA § 17-10-7 (c), since two of them were entered on the same date by the same judge and had concurrent sentences.[19] But these two convictions, which were separately indicted and which were contained in separate sentencing orders, concerned two separate sales of cocaine that took place on different days. Accordingly, the court did not err in treating them as separate convictions for purposes of OCGA § 17-10-7 (c). See *Harper v. State*.[20]

Second, he contends that the court erred in "stacking two recidivist sentencing provisions" by first sentencing Butler to life in prison under former OCGA § 16-13-30 (d), which at the time of Butler's crime and sentencing required a life sentence for repeat offenders of OCGA § 16-13-30 (b), see *Maddox v. State*,[21] and by then sentencing Butler to life without parole under OCGA § 17-10-7 (c), which required that upon conviction of a fourth felony, a defendant shall not be eligible for parole. Under similar circumstances, *Mims v. State*[22] approved a life without parole sentence, and we discern no reason to hold otherwise here. See *Johnson v. State*[23] ("[b]ecause [defendant's] conviction on Count 1 of the indictment was his second conviction for violating OCGA § 16-13-30 (b), 'the trial court was not prohibited from sentencing him under both OCGA §§ 16-13-30 (d) and 17-10-7 (c)' ").

Third, he contends that a life without parole sentence for selling $20 in cocaine is cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. With regard to the sentence of life imprisonment imposed pursuant to OCGA § 16-13-30 (d) for repeat drug offenders, *Rucks v. State*[24] held that under the Supreme Court of Georgia's decision of *Grant v. State*[25] (which relied on the United States Supreme Court decision of *Rummel v. Estelle*[26]), such a punishment did not violate the Eighth Amendment.

---

[19] See OCGA § 17-10-7 (d).

[20] *Harper v. State*, 270 Ga. App. 376, 379-380 (3) (606 SE2d 599) (2004).

[21] *Maddox v. State*, 227 Ga. App. 602, 605 (5) (490 SE2d 174) (1997).

[22] *Mims v. State*, 225 Ga. App. 331, 332 (2) (484 SE2d 37) (1997).

[23] *Johnson v. State*, 259 Ga. App. 452, 456 (3) (b) (576 SE2d 911) (2003).

[24] *Rucks v. State*, 201 Ga. App. 142, 144 (2) (410 SE2d 206) (1991).

[25] *Grant v. State*, 258 Ga. 299, 300 (2) (368 SE2d 737) (1988).

[26] *Rummel v. Estelle*, 445 U. S. 263, 284-285 (III) (100 SC 1133, 63 LE2d 382) (1980).

See *Martin v. State.*[27] With regard to the lack of parole imposed pursuant to OCGA § 17-10-7, Butler's argument "presents nothing for review as [Butler] lacks standing to contest the statute until such time as he claims a right of parole and the statute is asserted against him as a bar." (Punctuation omitted.) *Martin,* supra at 200 (1). Even if we were to consider this argument, *Ortiz v. State*[28] has held that the imposition of no possibility of parole under OCGA § 17-10-7 for recidivists does not violate the Eighth Amendment. See *Brabham v. State.*[29]

5. Butler argues that the State violated his due process rights under both the federal and state constitutions by failing to provide him with a speedy appeal. In *Chatman v. Mancill,*[30] our Supreme Court stated

> [w]hile there is no Sixth Amendment right to a speedy appeal, "due process concepts necessarily become implicated when substantial delays are experienced during the criminal appellate process." *Walker v. State.*[31] The decision in *Walker* presaged the U. S. Supreme Court's ruling in *Evitts v. Lucey,*[32] where the Court stated that if a State had an appellate process for finally adjudicating the guilt or innocence of a defendant, the procedures that make up the process "must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution."

In evaluating such a due process claim, we have held:

> The similarity of a defendant's interests in a speedy trial and a speedy appeal are such that the balancing test adopted for speedy trial violations in *Barker v. Wingo*[33] should be applied to situations in which a defendant claims that a delay in the appellate process is violative of due process of law. The four facts enunciated in *Barker v. Wingo,* supra [at 530], are the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. However, these factors have no talismanic qualities; courts must

---

[27] *Martin v. State,* 205 Ga. App. 200-201 (3) (422 SE2d 6) (1992).
[28] *Ortiz v. State,* 266 Ga. 752, 753-754 (2) (a) (470 SE2d 874) (1996).
[29] *Brabham v. State,* 240 Ga. App. 506, 507 (2) (a) (524 SE2d 1) (1999).
[30] *Chatman v. Mancill,* 278 Ga. 488, n. 2 (604 SE2d 154) (2004).
[31] *Walker v. State,* 247 Ga. 484, 485-486 (277 SE2d 242) (1981).
[32] *Evitts v. Lucey,* 469 U. S. 387, 393 (105 SC 830, 83 LE2d 821) (1985).
[33] *Barker v. Wingo,* 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972).

still engage in a difficult and sensitive balancing process. Absent an abuse of discretion, the decision of the trial court must be affirmed.

(Citation and punctuation omitted.) *Spradlin v. State*.[34]

Significantly, there is no ruling of the trial court to review for abuse of discretion, as Butler failed to raise this issue below. "As a result, he may not raise this issue for the first time in this appeal." *Alexander v. State*.[35] Even if we were to consider the merits of the enumeration, no evidence shows that the eight-year delay in filing the notice of appeal was due to the State or to Butler's appointed counsel, as nothing indicates that Butler desired that his counsel appeal his conviction. Indeed, since the filings in the trial court following the ruling on the motion for new trial (which filings concerned primarily attempts to have his sentence reviewed, to have his sentence set aside, and to obtain public records) were pro se until new appellate counsel appeared in 2005, the inference would be that Butler desired to proceed without counsel and without appealing. See *Smith v. State*[36] (appeal delay caused by defendant's actions not a due process violation).

Moreover, Butler cannot show that he was prejudiced by the delay, without which prejudice his claim of due process violations arising from an undue delay in his appeal must fail. See *Spradlin*, supra at 902-903 (3). See also *Smith*, supra at 573 (4). As discussed above, the enumerations Butler has raised on appeal are without merit; there can therefore be no prejudice in delaying a meritless appeal. Furthermore, Butler does not even attempt to show prejudice other than by claiming that his trial counsel is now deceased and would therefore be unable to testify at a motion for new trial hearing on ineffective assistance of counsel. But since his trial counsel already testified in the 1997 hearing on this issue, the factual premise of this argument is lacking. Accordingly, we can discern no due process violations in the delay of Butler's appeal.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED DECEMBER 6, 2005 —
RECONSIDERATION DENIED DECEMBER 16, 2005 —

---

[34] *Spradlin v. State*, 262 Ga. App. 897, 900-901 (3) (587 SE2d 155) (2003).

[35] *Alexander v. State*, 279 Ga. 683, 685 (2) (b) (620 SE2d 792) (2005).

[36] *Smith v. State*, 274 Ga. App. 568, 573 (4) (618 SE2d 182) (2005).

*William O. Cox, Brandon S. Clark, Craig T. Pearson*, for appellant.

*Tom Durden, District Attorney, Sandra Dutton, Assistant District Attorney*, for appellee.