**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**February 12, 2015**

# In the Court of Appeals of Georgia

A14A2151. CHERNOWSKI v. THE STATE.

DILLARD, Judge.

Dora Chernowski appeals the verdict and judgment entered against her on counts for driving under the influence and failure to maintain lane, for which she was tried and convicted after a single-vehicle accident in December 2004.[1] On appeal, Chernowski contends that (1) her due-process rights were violated by the trial-court clerk's failure to transmit a complete record and a seven-year delay in transmitting the record and (2) the trial court erred in denying her pretrial motion to suppress evidence and her renewed motion at trial as to that same evidence. For the reasons set forth *infra*, we affirm Chernowski's convictions but vacate and remand the case to the trial court for resentencing.

---

[1] Chernowski did not file a motion for new trial.

Viewed in the light most favorable to the jury's guilty verdict,[2] the record reflects that on December 26, 2004, emergency personnel were dispatched at approximately 9:30 p.m. to the location of a single-car accident on a residential portion of Spalding Drive in Fulton County. And upon arrival, Chernowski's vehicle was found turned on its side against a utility pole with Chernowski standing up inside the vehicle, trying to escape. A fire-department crew removed the vehicle's windshield to extract Chernowski, and she was immediately treated by medical personnel with a neck brace, strapped to a backboard, and transported to a hospital for additional treatment and evaluation.

Prior to Chernowski being transported from the scene, the responding police officer made brief contact with her as she was being treated by medical personnel. The officer did not perform any field-sobriety tests upon Chernowski because she was undergoing treatment until her transfer to the hospital, but he testified at trial that, upon contact with her, he noticed that she spoke with slurred speech, had very watery eyes, and reeked of a "very strong odor" of an alcoholic beverage. Additionally, Chernowski admitted to the officer that she had consumed alcohol as recently as 45 minutes prior to the accident. And based upon these factors, the officer was

---

[2] *See, e.g.*, *Muse v. State*, 323 Ga. App. 779, 780 (748 SE2d 136) (2013).

convinced that Chernowski was driving under the influence of alcohol to the extent that it was less-safe to do so. The officer's trial testimony was corroborated by that of the fire-department crew chief, who also testified that Chernowski spoke with slurred speech and smelled of an alcoholic beverage, and that he suspected she had been driving under the influence of alcohol.

After Chernowski's vehicle was impounded, the responding officer drove to the hospital where he immediately issued citations to Chernowski for driving under the influence and failure to maintain lane. He testified that because Chernowski was still undergoing medical treatment, he left the citations with her belongings rather than with her personally. And after having Chernowski sign the citations and explaining the charges, the officer read her Georgia's Implied Consent law and asked for her permission to administer a blood test, to which Chernowski agreed. The results of the test showed a blood-alcohol level of .228 grams.

Thereafter, Chernowski was charged by accusation for DUI per se,[3] DUI less-safe,[4] and failure to maintain lane.[5] She was then tried by a jury in August 2007, convicted on all counts, and the trial court then sentenced her on each of those counts. Chernowski timely filed a notice of appeal on August 24, 2007, and the trial court granted a supersedeas bond that same day. Nevertheless, the appeal was not docketed with this Court until July 25, 2014, which forms the basis of Chernowski's first enumeration of error. We will address each of her enumerations of error in turn.

1. Chernowski first contends that her due-process rights were violated by the trial-court clerk's failure to timely transmit the record to this Court for docketing and

---

[3] *See* OCGA § 40-6-391 (a) (5) ("A person shall not drive or be in actual physical control of any moving vehicle while . . . [t]he person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended . . . .").

[4] *See* OCGA § 40-6-391 (a) (1) ("A person shall not drive or be in actual physical control of any moving vehicle while . . . [u]nder the influence of alcohol to the extent that it is less safe for the person to drive . . . .").

[5] *See* OCGA § 40-6-48 ("Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules, in addition to all others consistent with this Code section, shall apply . . . [a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety . . . .").

4

resolution of her appeal. As such, she asks that we vacate the verdict and judgment entered against her.[6]

As previously stated, the record reflects that Chernowski timely filed her notice of appeal on August 24, 2007, but the appeal was not docketed with this Court until nearly seven years later on July 25, 2014. Her notice of appeal requested that the clerk "omit nothing from the record on appeal," and noted that a "[t]ranscript of evidence and proceedings will be filed for inclusion in the record on appeal."

The record transmitted from the trial court shows that on July 26, 2012, the clerk's office sent a letter to Chernowski's counsel requesting payment of $83.00 for preparation of the appellate record, noting that preparation of the record would not begin until payment was received, and asking that any transcripts to be included in the record be filed as soon as possible. There is no explanation or any indication in the record as to whether Chernowski's counsel ever checked the status of the appeal with the trial court before receiving that letter almost five years after filing the notice of appeal. There is, however, a case-summary sheet included in the record, which

---

[6] Chernowski also makes this same request in a separately filed "motion to vacate final verdict," to which she attached various exhibits. This motion is denied, and we further note that this Court cannot consider evidence that was not presented to the trial court. *See, e.g.*, *Williams v. State*, 226 Ga. App. 313, 315 (1) (485 SE2d 837) (1997).

indicates that the "file" was "checked out to appeals" on July 20, 2012, but that the file was later "reconstructed" and "recreated." However, again, there is no other explanation as to why this was necessary or what this notation even signifies.

On August 23, 2012, Chernowski paid the requested $83.00 for the appellate record. And then on September 5, 2012, the trial-court clerk sent a second letter to Chernowski's counsel as notification that a transcript still had not been filed with the court and, accordingly, that the appellate record could not be completed for transmission until receipt of same.[7] Thereafter, the record contains no indication of

---

[7] *See generally* OCGA § 5-6-42 ("Where there is a transcript of evidence and proceedings to be included in the record on appeal, the appellant shall cause the transcript to be prepared and filed as provided by Code Section 5-6-41 . . . . The party having the responsibility of filing the transcript shall cause it to be filed within 30 days after filing of the notice of appeal or designation by appellee, as the case may be, unless the time is extended as provided in Code Section 5-6-39."); OCGA § 5-6-41 (e) ("Where a . . . criminal trial is reported by a court reporter and the evidence and proceedings are transcribed, the reporter shall complete the transcript and file the original and one copy thereof with the clerk of the trial court, together with the court reporter's certificate attesting to the correctness thereof . . . . The original transcript shall be transmitted to the appellate court as a part of the record on appeal; and one copy will be retained in the trial court, both as referred to in Code Section 5-6-43. Upon filing by the reporter, the transcript shall become a part of the record in the case and need not be approved by the trial judge."); *Ashley v. JP Morgan Chase Bank, N.A.*, 327 Ga. App. 232, 236 (1) (758 SE2d 135) (2014) ("[I]t is well settled that the duty to order the transcript and to monitor timely the progress of the court reporter's office in transcript preparation is vested upon the appropriate appealing party." (punctuation omitted)).

what transpired until December 31, 2012, when the State filed a motion to dismiss Chernowski's appeal.

The State's motion to dismiss was scheduled for a February 15, 2013 hearing, but no hearing was held until July 24, 2013. It is undisputed between the parties that a hearing was held on this date, but no such hearing is reflected on the case-summary sheet included by the trial-court clerk's office in the record on appeal. Moreover, no transcript from this hearing was included with the appeal, and the record does not include any order by the trial court denying the State's motion. However, what is reflected by the record is that on August 12, 2013, Chernowski filed a motion for an extension of time in which to file a trial transcript, noting that at the July 24, 2013 hearing, the trial court ordered her to "have the file transcript [sic] filed with the Clerk of the Court within thirty (30) days of that date or show good cause why the time for filing the transcript should be extended." Thus, Chernowski requested an additional 30 days in which to file the transcript after learning that the court reporter could not complete it in the time required by the court. The trial court granted Chernowski's motion on August 23, 2013 , and the trial transcript bears a stamp showing that it was

7

filed in the trial-court clerk's office on September 23, 2013.[8] Nevertheless, the appeal was not forwarded for docketing in this Court until July 2014.

Based on the foregoing, Chernowski contends that her due-process rights were violated by the trial-court clerk's office when it delayed in transmitting the "reconstructed" appellate record, and she correctly notes that this record does not contain (1) her motion to suppress, (2) the trial court's order denying her motion to

---

[8] The transcript also definitively notes that the trial exhibits are not attached, and accordingly, no exhibits were forwarded to this Court. Chernowski, of course, bore the responsibility of compiling a complete record of what transpired below. *See, e.g.*, *Black v. State*, 309 Ga. App. 880, 882 (1) (711 SE2d 428) (2011) ("An appellant has the burden of proving trial court error by the appellate record, and must compile a complete record of what transpired in the trial court. Otherwise, there is not sufficient information for an appellate court's review and the trial court ruling enumerated as error must be upheld. When a portion of the evidence bearing upon the issues raised by the enumerations of error is not brought up in the appellate record so that this court can make its determination from a consideration of it all, an affirmance as to that issue must result." (punctuation omitted)); *see also* Court of Appeals Rule 41 (c) ("In a motion to supplement the record, counsel shall describe the material to be supplemented; but shall not attach the supplemental materials to the motion filed with the Court unless directed to do so by the Court. If the motion is granted, the Clerk of Court will obtain the supplemental record from the trial court clerk."); *cf. Ashley*, 327 Ga. App. at 236 (1) ("[I]t is well settled that the duty to order the transcript and to monitor timely the progress of the court reporter's office in transcript preparation is vested upon the appropriate appealing party." (punctuation omitted)); *Rois-Mendez v. Stamps*, 312 Ga. App. 136, 137 (717 SE2d 718) (2011) (discussing prior appeal's remand to the trial court for completion of the record upon motion of the appellant after appellant realized that requested exhibits were omitted from appellate record).

suppress, or (3) a transcript of the motion-to-suppress hearing.[9] And as the Supreme Court of Georgia has explained, although there is no Sixth Amendment right to a speedy appeal, "due process concepts necessarily become implicated when substantial delays are experienced during the criminal appellate process."[10] Accordingly, the analytical framework created by the four speedy-trial factors in *Barker v. Wingo*[11] provides "a familiar, thorough and practical means of assessing the fairness and prejudice issues that arise in cases involving the delayed resolution of direct appeals from judgments entered on criminal convictions in which the death penalty was not imposed."[12]

---

[9] Chernowski's separate motion before this Court and a later-filed affidavit purport to give further explanation as to the missing motion-to-suppress transcript and her efforts to obtain same, but, as previously noted, we cannot consider evidence that was not presented to the trial court. *See, e.g.*, *Williams*, 226 Ga. App. at 315 (1).

[10] *Walker v. State*, 247 Ga. 484, 485 (277 SE2d 242) (1981); *accord Chatman v. Mancill*, 278 Ga. 488, 488 n.2 (604 SE2d 154) (2004).

[11] 407 U.S. 514 (92 SCt 2182, 33 LE2d 101) (1972).

[12] *Chatman v. Mancill*, 280 Ga. 253, 257 (2) (a) (626 SE2d 102) (2006); *see also Bynum v. State*, 315 Ga. App. 392, 395 (3) (726 SE2d 428) (2012) (noting that "[w]hen an appellant already has been convicted and inordinate appellate delay potentially presents such issues, those issues are to be reviewed under a modified version of the analysis used for evaluation of speedy trial interests, as presented in *Barker v. Wingo*" (footnote omitted)).

The four *Barker* factors—the length of the delay, the reason for the delay, the defendant's assertion of the right, and the prejudice to the defendant—are evaluated by trial courts in "a difficult and sensitive balancing process."[13] And we review a trial court's conclusion after assessing these factors for an abuse of discretion.[14] But here, we are precluded from considering this enumeration of error because, as demonstrated by the record that *is* before this Court, Chernowski failed to raise this issue below and may not raise it for the first time on appeal.[15]

Chernowski's failure to raise this issue below not only precludes her from raising this issue on appeal, it has also (negatively) contributed to the already confusing state of the record before us, given her failure to attempt any clarification or completion of the record via the remedies afforded to her by law. Indeed, OCGA § 5-6-41 provides that when

---

[13] *Butler v. State*, 277 Ga. App. 57, 64 (5) (625 SE2d 458) (2005) (punctuation omitted); *accord Spradlin v. State*, 262 Ga. App. 897, 901 (2) (587 SE2d 155) (2003).

[14] *Bynum*, 315 Ga. App. at 395 (3); *Butler*, 277 Ga. App. at 64 (5).

[15] *See Bynum v. State*, 315 Ga. App. at 395-96 (3) ("Absent an abuse of discretion, the decision of the trial court must be affirmed. Significantly, there is no ruling of the trial court to review for abuse of discretion, as [appellant] failed to raise this issue below. As a result, he may not raise this issue for the first time on appeal."); *Butler v. State*, 277 Ga. App. at 63 (5) (same).

10

any party contends that the transcript or record does not truly or fully disclose what transpired in the trial court and the parties are unable to agree thereon, the trial court shall set the matter down for a hearing with notice to both parties and resolve the difference so as to make the record conform to the truth. If anything material to either party is omitted from the record on appeal or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the appellate court, on a proper suggestion or of its own initiative, may direct that the omission or misstatement shall be corrected and, if necessary, that a supplemental record shall be certified and transmitted by the clerk of the trial court.[16]

At no time has Chernowski moved to have the record completed, and in cases in which the appellant does not move to have the record completed under OCGA § 5-6-41 (f), we will "find that there is nothing for this court to review in the appellate record . . . and that we are bound to assume that the trial court ruled correctly."[17]

---

[16] OCGA § 5-6-41 (f); *see DeToma v. State*, 296 Ga. 90, 94 (2) n.3 (765 SE2d 596) (2014) (noting that appellant had not attempted to supplement the transcript on appeal using the procedures set forth in OCGA § 5-6-41 (f)).

[17] *Rivera v. Harris*, 259 Ga. 171, 171 (2) (377 SE2d 844) (1989); *see also Zachary v. State*, 245 Ga. 2, 4 (262 SE2d 779) (1980) ("[When] the transcript or record does not fully disclose what transpired at trial, the burden is on the complaining party to have the record completed in the trial court under the provision of [OCGA § 5-6-41 (f)]. When this is not done, there is nothing for the appellate court to review." (citations omitted)); *Ivory v. State*, 199 Ga. App. 283, 284 (1) (405 SE2d 90) (1991). As for the inexplicable "reconstruction" of the record by the trial court,

Suffice it to say, given the foregoing, we are required to assume that the trial court ruled correctly in the case *sub judice*. Our determination in this regard has a particular impact on Chernowski's second enumeration of error, which is that the trial court erred in denying her motion to suppress evidence (as discussed *infra*).

2. In her second enumeration of error, Chernowski argues that the trial court erred in denying her motion to suppress the results of her blood test when the officer failed to comply with the requirements of Georgia's Implied Consent law. However, because of the incomplete state of the record, and Chernowski's aforementioned failure to move for completion of same, we must affirm the trial court's denial of the motion to suppress.

Although it is undisputed that the trial court denied Chernowski's motion to suppress, the record before us does not contain the motion, the order denying the motion, or the transcript of the motion-to-suppress hearing. And we are required to

_____

which still appears to omit several filings from the original record as discussed *supra*, we note that OCGA § 24-11-2 (a) provides that when "any original public records have been lost, mutilated, stolen, or destroyed, the custodian may establish duplicates in accordance with the provisions of this article" and that, when "such public records are established by duplicates, they shall have all of the effect in evidence as the original records would have had." *See also Magnolia State Bank v. VNS Corp.*, 327 Ga. App. 180, 182 (755 SE2d 553) (2014) (physical precedent only) (noting that OCGA § 24-11-2 logically includes court records).

uphold the trial court's findings of fact and credibility determinations at a suppression hearing unless they are shown to be clearly erroneous.[18] Here, the absence of the transcript from the record makes such a showing impossible, and we must "assume as a matter of law that the evidence adduced at the hearing supported the trial court's denial of the motion to suppress."[19]

3. Next, Chernowski contends that the trial court erred in denying her renewed motion at trial that the blood-test evidence should be suppressed.[20] The trial court declined to reconsider Chernowski's motion after the State objected on the basis that

---

[18] *Fides v. State*, 237 Ga. App. 607, 607 (1) (516 SE2d 101) (1999) (punctuation omitted); *see also Boston v. State*, 226 Ga. App. 17, 18 (3) (485 SE2d 578) (1997) ("[N]o transcript of a suppression hearing appears in the record. Absent a transcript of the suppression hearing, we must assume as a matter of law that the evidence presented supported the findings of the court.").

[19] *Fides*, 237 Ga. App. at 607 (1) (punctuation omitted); *see also Boston*, 226 Ga. App. at 18 (3).

[20] Chernowski lists three enumerations of error but consolidates both arguments as to the denial of her motions into one argument section. For the sake of clarity, we address these arguments in separate divisions of the opinion.

the trial court previously ruled upon same.[21] Accordingly, we cannot say that the trial court erred.[22]

Nevertheless, looking to the officer's testimony at trial,[23] it would appear that Chernowski's enumerations of error lack independent merit when she asserts that the blood-test results should have been suppressed because she was not under arrest prior to being read Georgia's Implied Consent notice by the officer.[24] Although

---

[21] *Cf. Floyd v. State*, 156 Ga. App. 741, 741 (1) (275 SE2d 786) (1980) (considering appellant's arguments as to denial of motion to suppress, despite absence of pretrial motion-hearing transcript, when a renewed motion was made and another complete hearing was held as to the admissibility of the evidence).

[22] *See State v. Ross*, 293 Ga. 834, 835 (750 SE2d 305) (2013) ("Thus, a court retains broad discretion over interlocutory evidentiary rulings which may be modified at any time until entry of final judgment. Our appellate courts have applied this exception to allow trial courts to reconsider interlocutory rulings on the admissibility of evidence." (citation and punctuation omitted)).

[23] *See, e.g.*, *White v. State*, 263 Ga. 94, 98 (5) (428 SE2d 789) (1993) (considering both the transcript of the hearing on appellant's motion to suppress and the trial transcript to find no error in the trial court's denial of appellant's motion).

[24] *See* OCGA § 40-5-55 (a) ("[A]ny person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent, subject to Code Section 40-6-392, to a chemical test or tests of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug, if arrested for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391 or if such person is involved in any traffic accident resulting in serious injuries or fatalities.").

14

Chernowski's recollection differed from that of the law-enforcement officer, and although defense counsel cross-examined the officer extensively as to alleged inconsistencies in the chronology of events (as reflected in his written reports),[25] the officer testified that he issued citations to Chernowski *before* reading her Georgia's Implied Consent notice.[26] And pursuant to OCGA § 17-4-23,

> *[a] law enforcement officer may arrest a person accused of violating any law or ordinance governing the operation . . . of motor vehicles by the issuance of a citation*, provided the offense is committed in his presence . . . , except that, where the offense results in an accident, an investigating officer may issue citations regardless of whether the offense occurred in the presence of a law enforcement officer.[27]

---

[25] Again, the trial exhibits were clearly noted as not having been attached to the transcript and thus were not transmitted with this appeal. Moreover, Chernowski has not moved for supplementation of the record on appeal and apparently did not seek to supplement the record below either. *See supra* note 8.

[26] *Cf. Hough v. State*, 279 Ga. 711, 717-18 (2) (b) (620 SE2d 380) (2005) (noting that results should have been suppressed when "[t]here was no indication of an arrest at that time, whether by citation or otherwise").

[27] OCGA § 17-4-23 (a) (emphasis supplied).

15

Thus, because Chernowski's arguments are based upon the officer's credibility, this was an issue for the trial court's resolution.[28]

4. Finally, although Chernowski does not raise the issue on appeal, we vacate her sentence and remand to the trial court for resentencing because the court did not merge her convictions for DUI less-safe and DUI per se.[29] On remand, the trial court is instructed to merge her DUI less-safe conviction into the DUI per se conviction.[30]

---

[28] *See, e.g.*, *Brown v. State*, 293 Ga. 787, 803 (3) (b) (2) (750 SE2d 148) (2013) ("First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment." (punctuation omitted)).

[29] *See Hulett v. State*, 296 Ga. 49, 54 (2) (766 SE2d 1) (2014) ("[When] neither party properly raises and argues a merger issue, this Court has no duty to scour the record searching for merger issues. However, if we notice a merger issue in a direct appeal, as we have here, we regularly resolve that issue, even where it was not raised in the trial court and is not enumerated as error on appeal." (citation and punctuation omitted)); *Nazario v. State*, 293 Ga. 480, 486 (2) (b) (746 SE2d 109) (2013) ("[T]his Court regularly decides merger issues—and vacates convictions and sentences—even where the issue was not raised in the trial court and is not enumerated as error on appeal.").

[30] *See Crowe v. State*, 314 Ga. App. 527, 532-33 (5) (a) (724 SE2d 831) (2012) (agreeing with appellant that convictions for DUI less-safe and DUI per se merged, and vacating and remanding for resentencing); *Schlanger v. State*, 290 Ga. App. 407,

Accordingly, for all of the foregoing reasons, we affirm Chernowski's convictions but vacate her sentence and remand the case to the trial court for resentencing.

*Judgment affirmed in part, vacated in part, and case remanded with direction.*

*Doyle, P. J., and Miller, J., concur.*

---

415 (8) (659 SE2d 823) (2008) (physical precedent only) ("[T]he trial court failed to expressly merge [appellant's] DUI convictions for sentencing purposes. Thus, . . . we must vacate [appellant's] sentence and remand this case to the trial court for resentencing." (citation omitted)).