**FOURTH DIVISION**
**DILLARD, P. J.,**
**REESE and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 1, 2017**

# In the Court of Appeals of Georgia

A16A2058. JONES v. THE STATE.

A16A2066. JOHNSON v. THE STATE.

A17A0110. LEMONS v. THE STATE.

DILLARD, Presiding Judge.

Following a trial by jury, Travis Jones, Willie Johnson, William Lemons, and Robert Turner were convicted of burglary.[1] Jones, Johnson, and Lemons now challenge their convictions. In Case Numbers A16A2058, A16A2066, and A17A0110, Jones, Johnson, and Lemons argue that the trial court erred in denying their motions for a mistrial after a main witness on behalf of the State used the prosecutor's own notes to refresh his recollection. Additionally, in Case Numbers A16A2066 and A17A0110, Johnson and Lemons challenge the sufficiency of the

---

[1] We have consolidated the parties' cases for consideration on appeal. Turner is not a party to this appeal.

evidence as to their convictions for burglary. For the reasons set forth *infra*, we affirm in each case.

Viewed in the light most favorable to the verdict,[2] the record reflects that Jones, Johnson, Lemons, and Turner were inmates at the Jefferson County Correctional Institution, who were assigned to a work detail located near the victim's residence. The inmates were directed to clear brush from the roadside and were divided into two groups: five inmates to the north and six inmates to the south, while one guard monitored their work. The victim's residence was beside the boundary of the north end of the work area.

During a midday break, the inmates assigned to the south end sat with the guard in the center of the work area while the north-end inmates took their break on a hill near the victim's residence. But after some time had passed, the guard realized that he was not able to see all of the inmates on the hill. The guard then walked up the hill and, as he approached, an inmate yelled to warn others that he was coming. What then ensued resembled a deleted scene from "O Brother, Where Art Thou?"[3]

[2] *See, e.g.*, *Muse v. State*, 323 Ga. App. 779, 780 (748 SE2d 136) (2013).

[3] *See* O BROTHER, WHERE ART THOU? (Touchstone Pictures 2000).

Just prior to the guard's arrival, an inmate who was uninvolved in the incident saw Jones and Lemons walk toward the back of the house and then heard sounds of objects breaking. Then, as the guard approached, he heard the sounds of feet moving across a hard surface. When the guard reached the top of the hill, he found Jones and Turner standing beside a tree near the house, and observed Lemons walk from the rear of the house back to his work post. The guard also watched Johnson, who was assigned to the opposite end of the work area, walk across the field, which the guard thought was suspicious. Upon the guard's arrival at the top of the hill, it was immediately apparent that Jones was intoxicated, and that Turner and Lemons were attempting to calm him.

The guard moved all of the inmates to the bottom of the hill to further assess the situation and, once at the bottom, noticed that Lemons was wearing a gold wristwatch, which he should not have had on while participating in a work detail. The guard then called for backup to remove Jones from the detail when he continued to exhibit signs of intoxication and erratic behavior. Prior to being transported away from the work detail, Jones was searched and found to be in possession of several ink pens and an XM radio.

Thereafter, the Jefferson County Sheriff's Office began to investigate a potential burglary of the victim's residence. After learning that his home might have been burglarized, the victim—who was in the process of moving—went to the house and discovered that he could not open the front door because a lounge chair, lamp, and computer had been thrown against it. Law enforcement determined that the perpetrators had entered the now ransacked house through the back door, and the victim ultimately identified the watch found in Lemons's possession and the pens and radio in Jones's possession as his property (all having last been located inside the residence).

During the ensuing investigation, law enforcement collected five liquor bottles from inside the house. One bottle resulted in the recovery of a single usable fingerprint, and though the print was excluded as belonging to the other inmates, it could not be excluded as belonging to Johnson. The victim testified that this bottle, which was found on a freezer by the backdoor, had last been located in a room toward the front of the house. On a second bottle, law enforcement recovered DNA matching Johnson and Turner. The victim testified that this bottle, which was found in a room near the front door, had last been located in a room across the hall. When questioned by law enforcement, Johnson initially denied any involvement in the burglary, but

4

when later confronted with the fingerprint evidence, he admitted to touching the bottle outside of the residence before handing it back to another inmate. Johnson also initially denied drinking from a bottle of alcohol before admitting that he had done so, but he then once again denied consuming alcohol—even after being confronted with the DNA evidence.

All four inmates were subsequently indicted for first-degree burglary and, following a trial by jury, convicted of that offense. These appeals by Jones, Johnson, and Lemons follow the denial of their motions for new trial.

1. In Case Numbers A16A2058, A16A2066, and A17A0110, Jones, Johnson, and Lemons argue that the trial court erred in denying their motions for mistrial after the work-detail guard used notes prepared by the prosecutor to refresh his recollection. While all appellants argue that the document was not the type permitted for refreshing a witness's recollection, Jones further contends that the State's prosecutor committed misconduct. We disagree that the trial court abused its discretion in denying the motions for a mistrial.[4]

---

[4] *See Williams v. State*, 248 Ga. App. 111, 113 (2) (545 SE2d 669) (2001) ("We review for manifest abuse of discretion a trial court's denial of a motion for a mistrial, and we will reverse only if a mistrial is essential to the preservation of the defendant's right to a fair trial." (punctuation omitted)).

The record reflects that during the State's direct examination of the work-detail guard (who had suffered three mini-strokes since the date of the incident in question), the witness attempted to reference documents he brought with him to the stand after he was asked to which side of the work detail Lemons had been assigned. Seeing this, the State asked the guard what documents he was holding, and the guard replied, "That was given [to] me by you[,] I think." The State's prosecutor then asked to see the documents and responded that she "didn't realize I had left this with you." The guard responded, "Yeah, you left that with me." The State's prosecutor then replied, "All right. You can have it back then," before moving on to a new line of questioning.

Direct examination continued without objection for quite some time until the State asked the guard to indicate on a diagram the location of the tree where he saw Jones and Turner standing. At that point, Johnson's counsel observed that the guard appeared to be "using something to refresh his memory" because he "[kept] looking down at the papers." Thus, defense counsel requested to see the writing and to question the guard under OCGA § 24-6-612 (a).[5] When the court asked the guard to

[5] *See* OCGA § 24-6-612 (a) ("If a witness uses a writing to refresh his or her memory while testifying, an adverse party shall be entitled to have the writing produced at the hearing or trial, to inspect it, to cross-examine the witness on such writing, and to introduce in evidence those portions of such writing which relate to the testimony of the witness.").

6

what he was referring, the guard responded that it was "a photo that the DA gave me when she came out to my residence." The State's prosecutor then volunteered that it appeared she had "inadvertently left [her] notes with [the guard]" and that it "was not intentionally done." The court allowed the State to retrieve the document from the guard and ordered that the notes be shown to the defendants for purposes of cross examination. The document was subsequently made a court exhibit for inclusion in the record.[6]

---

[6] We note that despite inclusion of the transcript on appeal, not one of the three appellants ensured that any of the trial exhibits were transmitted to this Court for consideration with the transcript. The table of contents in the transcript indicates that the exhibits are contained on a separate CD, which was not included. Although this Court took it upon itself to seek supplementation of the record from the trial court, we remind the parties that "it is the burden of the appealing party to ensure that a complete record is transmitted to this Court on appeal," and "[t]he appellant's failure to complete the record may also result in this Court declining to consider enumerations of error related to the missing evidence." Court of Appeals Rule 18 (b); *see Chernowski v. State*, 330 Ga. App. 702, 706 (1) n.8 (769 SE2d 126) (2015) ("The transcript . . . definitively notes that the trial exhibits are not attached, and accordingly, no exhibits were forwarded to this Court. [The Appellant], of course, bore the responsibility of compiling a complete record of what transpired below."). Indeed, when the record is not supplemented with the missing exhibits, we must assume that the exhibits support the judgment below. *See City of Byron v. Betancourt*, 242 Ga. App. 71, 72 (2) (528 SE2d 841) (2000) ("In the absence of a transcript, including the exhibits tendered into evidence, we must assume the judgment complained of was supported by competent evidence and are duty-bound to affirm.").

The defendants moved for a mistrial due to "prosecutorial misconduct by allowing [the] witness to continue to hold onto these notes, even though [the State's prosecutor] knew that they were inappropriate for him to have." But the trial court denied those motions after concluding that there was no prosecutorial misconduct. Then, the court permitted the State to continue questioning the guard after allowing him to refresh his recollection with an incident report that he had prepared the day after the work-detail incident. And when the defendants later cross-examined the guard and asked about the prosecutor's notes, the guard testified that he "wasn't actually using [the notes]" and that he was "*going* to look down at it to see [if he] could . . . refresh [his] memory of the inmates that were working at the house."[7]

In considering the defendants' argument, we necessarily begin our analysis with the text of OCGA § 24-6-612, which permits a witness to "use a writing to refresh his or her memory while testifying," but also provides that "an adverse party [is] entitled to have the writing produced at the hearing or trial, to inspect it, to cross-examine the witness on such writing, and to introduce in evidence those

---

[7] (Emphasis supplied).

8

portions of such writing which relate to the testimony of the witness."[8] Here, the

appellants contend that, notwithstanding their ability to cross-examine the work-detail

guard as to the notes that were in his possession during some portion of his direct

examination, the guard was improperly permitted to use the notes to refresh his

recollection because the document was prepared by the State's prosecutor outside of

the guard's presence. And, at least in cases decided under our prior Evidence Code,[9]

---

[8] OCGA § 24-6-612 (a); *see generally* Ronald L. Carlson & Michael Scott Carlson, CARLSON ON EVIDENCE 326 (5th ed. 2016) ("Courts have outlined procedures for refreshing witness recollection. Upon establishing the proper foundation, counsel will typically offer the witness the writing to inspect, and will show a copy of the writing to the opposing parties: 'The best practice is for the trial court to have the witness silently read the writing and then to state whether the writing has refreshed his or her recollection.' With the recall of memory stimulated, the process of refreshing is complete, and the writing may be laid aside. On direct, it is generally not read to the jury." (footnotes omitted)).

[9] The prior Evidence Code specified that "[a] witness may refresh and assist his memory by the use of any written instrument or memorandum, provided he shall finally speak from his recollection thus refreshed or shall be willing to swear positively from the paper." Former OCGA § 24-9-69 (2012); *see also Jerkins v. Jerkins*, 300 Ga. App. 703, 705 (1) (686 SE2d 324) (2009) ("If the witness swears positively from the paper, the paper takes the place of present recollection and can be read to the jury by the witness at trial."); *Sweat v. State*, 203 Ga. App. 290, 291 (3) (416 SE2d 845) (1992) ("[I]n order to swear positively from the paper, it is essential that the witness should at some time have had personal knowledge of the correctness of the memorandum." (punctuation omitted)). Because this case was tried after January 1, 2013, our new Evidence Code applies. *See* Ga. L. 2011, pp. 99, 214, § 101 (providing that Georgia's new Evidence Code applies "to any motion made or hearing or trial commenced on or after" January 1, 2013).

when a document was "prepared by a third person not in the presence of [the] witness, the [witness's] memory [was] not refreshed by such memorandum and such testimony [was] inadmissible."[10] This was so even though "a witness [was allowed to] refresh his memory from a writing prepared by another."[11]

But here, at the motion-for-new-trial hearing, the trial judge—who had the benefit of observing the witness's demeanor and judging his credibility before ruling upon the motions for mistrial[12]—noted his prior determination that the guard did not

---

[10] *Zilinmon v. State*, 234 Ga. 535, 537 (3) (216 SE2d 830) (1975); *accord McEntyre v. McRae*, 240 Ga. App. 148, 149 (2) (522 SE2d 731) (1999); *Atlanta Fire Sys., Inc. v. Alexander Underwriters Gen. Agency, Inc.*, 185 Ga. App. 873, 875 (4) (366 SE2d 197) (1988); *see also Kell v. State*, 280 Ga. 669, 674 (2) n.5 (631 SE2d 679) (2006) (noting that "it is not proper to use a report prepared by another to refresh a witness's recollection [when] the witness has no personal knowledge of the correctness of the report").

[11] *Zilinmon*, 234 Ga. at 537 (3); *see also Miller v. State*, 275 Ga. 32, 36 (3) (561 SE2d 810) (2002) ("[A]ny document may be used to refresh the recollection of a witness, and the document need not have been prepared by the witness."); *see generally United States v. Marrero*, 651 F3d 453, 472 (IV) (6th Cir. 2011) ("[T]he propriety of permitting a witness to refresh his memory from a writing prepared by another largely lies within the sound discretion of the trial court." (punctuation omitted); *United States v. Maddix*, 96 F3d 311, 315 (8th Cir. 1996) (same).

[12] *See, e.g.*, *State v. Ellison*, 271 Ga. App. 898, 904 (6) (611 SE2d 129) (2005) ("[T]he credibility of witnesses and the weight to be given their testimony is a decision-making power that lies solely with the trier of fact. The trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony. We cannot, and will not, usurp the authority

10

actually use the relevant document to refresh his recollection. And indeed, the record supports this conclusion when, on direct examination, the guard testified that he "wasn't actually using [the notes]" and that he was "*going* to look down at it to see [if he] could . . . refresh [his] memory of the inmates that were working at the house."[13] Furthermore, the record reflects that the witness's recollection was only refreshed after he was permitted to review the incident report that he created in the immediate wake of the day in question, after review of which he provided more detailed and substantial answers to the State's questions. As other courts have rightly determined, "[e]ven [when] a witness reviewed a writing before or while testifying, if the witness did not rely on the writing to refresh memory, Rule 612 confers no rights on the adverse party."[14] Thus, because the witness did not actually use the

---

of the trial judge to consider such factors as demeanor and other credibility-related evidence in reaching its decision." (emphasis, punctuation, and footnote omitted)); *Varnadoe v. State*, 227 Ga. App. 663, 665 (4) (490 SE2d 517) (1997) ("This Court will not second guess the trial court which heard testimony from this witness both at trial and at the motion for new trial hearing and was in a position to evaluate the demeanor of the witness and the credibility of his testimony.").

[13] (Emphasis supplied).

[14] *United States v. Sheffield*, 55 F3d 341, 343 (8th Cir. 1995) (punctuation omitted); *accord Frazier v. Ford Motor Co.*, Case. No. 4:05CV04077 JLH, 2008 WL 4809130, at *1 (W.D. Ark. 2008); *Sauer v. Burlington N. ¶. Co.*, 169 FRD 120, 123 (III) (A) n.3 (D. Minn. 1996); *see also Sporck v. Peil*, 759 F2d 312, 318 (III) (3rd Cir.

objected-to document to refresh his recollection, the trial court did not abuse its discretion in denying the appellants' motions for mistrial.

As for Jones's additional argument that the State engaged in prosecutorial misconduct by allowing the guard to maintain possession of the prosecution's notes, even after learning that they were inadvertently left with the witness at a prior time, we note that "[a] charge of prosecutorial misconduct is a serious charge and is not to be lightly made[.]"[15] And having raised it, Jones has the duty to "prove it by the record and by legal authority."[16]

1985) (holding that deposing counsel failed to lay proper foundation under Rule 612 to invoke right to production of documents when counsel failed to establish either that deponent relied on any documents in giving his testimony or that any documents influenced his testimony); *Guarantee Abstract & Title Co., Inc. v. U.S.*, 696 F2d 793, 796 (10th Cir. 1983) (holding that trial court did not err in refusing to order witness to produce document he glanced at while testifying; there was no showing the witness relied on the document to refresh memory because, just before he pulled slip of paper from his pocket, he answered he did not know the answer to counsel's question and gave the same answer afterwards); *Suss v. MSX Intern. Eng. Servs., Inc.*, 212 FRD 159, 165 (II) (B) (S.D. N.Y. 2002) ("Rule 612 requires that, for an adversary to obtain production of a writing, the witness must have actually relied on the writing to refresh his or her memory. Thus, even if the witness consults a writing while testifying, the adverse party is not entitled to see it unless the writing influenced the witness's testimony." (punctuation omitted)).

[15] *Meredith v. State*, 211 Ga. App. 213, 215 (4) (438 SE2d 644) (1993).

[16] *Id.*

Here, the trial court denied the motion for mistrial on the grounds of prosecutorial misconduct after deciding, based on its "observations and conclusions," that there was no such misconduct. More specifically, the court determined that the State's prosecutor "made a mistake and left her notes [with the witness] by accident," and that when she saw that she had done so, she "most likely did what many of us would do, ['W]ell what do I do[?'], and just didn't make the right decision, which would have been to say, ['W]ell let me take those back.[']" Once again, given the trial court's benefit of observing demeanor and assessing credibility when making this determination, and given the additional conclusion that the witness did not actually refresh his recollection from the prosecution's notes, as discussed in detail *supra*, we simply cannot say that the trial court abused its discretion by denying the motion for mistrial on this ground.[17]

---

[17] *See Smith v. State*, 276 Ga. 263, 265 (3) (577 SE2d 548) (2003) (holding that trial court did not abuse its discretion in denying mistrial based upon allegation of prosecutorial misconduct when underlying circumstances were made known to the jury and were fully probed on cross examination, such that it could not be said "that the prosecution had engaged in misconduct which would have affected the outcome of the jury's deliberations"); *Dixon v. State*, 303 Ga. App. 517, 522 (3) (693 SE2d 900) (2010) (holding that trial court did not abuse its discretion in denying mistrial based upon allegation of prosecutorial misconduct when appellant failed to "point to evidence that the prosecutor intentionally solicited the improper comment from the witness").

2. Next, in Case Numbers A16A2066 and A17A0110, Johnson and Lemons challenge the sufficiency of the evidence as to their convictions for first-degree burglary.[18] We disagree as to both defendants' contentions.

At the outset, we note that when a criminal conviction is appealed, the appellant no longer enjoys a presumption of innocence.[19] And the relevant question is whether, "after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[20] We do not weigh the evidence or determine witness credibility, and the jury's verdict will be upheld so long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case.[21]

---

[18] Jones does not challenge the sufficiency of the evidence as to his conviction but, nevertheless, there was sufficient evidence to sustain same.

[19] *Arbegast v. State*, 332 Ga. App. 414, 415 (1) (773 SE2d 283) (2015); *Westbrooks v. State*, 309 Ga. App. 398, 399 (1) (710 SE2d 594) (2011).

[20] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[21] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001); *Westbrooks*, 309 Ga. App. at 399-400 (1).

A person commits the offense of burglary in the first degree when he or she, "without authority and with the intent to commit a felony or theft therein, . . . enters or remains within an occupied, unoccupied, or vacant dwelling house of another or any building . . . or other such structure designed for use as the dwelling of another."[22] A conviction for burglary may be based upon circumstantial evidence if "the proved facts are not only consistent with the hypothesis of guilt, but exclude every other reasonable hypothesis but the guilt of the accused."[23] Thus, when the evidence meets this test, "circumstantial evidence is as probative as direct evidence, and whether this burden has been met is a question for the jury."[24] And when the jury is authorized to find that the evidence, though circumstantial, excluded every reasonable hypothesis except the defendant's guilt, "the verdict will not be disturbed unless the verdict is insupportable as a matter of law."[25] Finally, although circumstantial evidence must

---

[22] OCGA § 16-7-1 (b).

[23] *Johnson v. State*, 291 Ga. App. 253, 254 (661 SE2d 642) (2008) (punctuation omitted); *see also* OCGA § 24-14-6 ("To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused.").

[24] *Johnson*, 291 Ga. App. at 254 (punctuation omitted).

[25] *Id.* (punctuation omitted).

"exclude every other *reasonable* hypothesis but the defendant's guilt, the evidence need not exclude every inference or hypothesis."[26] With these guiding principles in mind, we will now consider Lemons and Johnson's challenges to the evidence against them.

(a) As to Lemons, the State presented sufficient evidence of his guilt when it showed that he was working in the vicinity of the burglarized residence; was seen walking near the back of the house just prior to the guard's arrival to investigate; and was in possession of a gold wristwatch later identified as belonging to the homeowner. It is well established that evidence of "recent, unexplained (or unsatisfactorily explained) possession of stolen goods may be sufficient to give rise to an inference that the defendant committed the burglary[.]"[27] And whether a defendant's "explanation of possession is satisfactory is a question for the jury,"[28] as is the lack of an explanation.[29] Here, the jury was entitled to reject, and did reject,

---

[26] *Id.* (punctuation omitted).

[27] *See, e.g.*, *Martin v. State*, 254 Ga. App. 40, 41 (1) (561 SE2d 154) (2002) (punctuation omitted).

[28] *Id.* (punctuation omitted).

[29] *Id.*

16

Lemons's explanation of having found the watch outside of the home when there was also testimony that Lemons claimed that the watch was a gift from his family. Accordingly, his challenge to the sufficiency of the evidence is without merit.[30]

(b) As to Johnson, the State presented sufficient evidence of his guilt when it showed that he was seen suspiciously walking across a field near the residence, notwithstanding his assignment to work in another area; he provided inconsistent statements to law enforcement regarding his involvement (or lack thereof); and two separate bottles of alcohol were found inside the residence and linked to him, with one containing a print that could not be excluded as belonging to him and one containing his DNA. In light of the inconsistent statements Johnson provided to law enforcement, the jury was entitled to reject as unreasonable his explanation of having touched a bottle outside of the residence before another inmate took the empty bottle back inside, and his denial of having consumed any alcohol when his DNA was found

---

[30] *See Harris v. State*, 328 Ga. App. 852, 854 (1) (763 SE2d 133) (2014) ("The evidence, taken together, placed [the defendant] at [the location of the burglary] and in possession of stolen property. [When] a defendant is in recent possession of stolen goods, his guilt may be inferred [when] the evidence independently establishes an unauthorized entry."); *Martin*, 254 Ga. App. at 41 (1) (holding that, *inter alia*, defendant's recent, almost contemporaneous, possession of the stolen goods, his conflicting statements to the police, and other circumstances presented sufficient evidence to sustain conviction for burglary).

on a bottle.[31] Accordingly, his challenge to the sufficiency of the evidence is similarly without merit.[32]

For all of the foregoing reasons, we affirm the convictions in Case Numbers A16A2058, A16A2066, and A17A0110.

*Judgments affirmed. Reese and Bethel, JJ., concur.*

---

[31] *See Rudison v. State*, 322 Ga. App. 248, 249-50 (1) (744 SE2d 444) (2013) (holding that jury was entitled to reject as unreasonable the explanation that defendant was framed when his DNA was found on an item at the crime scene); *Gant v. State*, 291 Ga. App. 823, 824-25 (1) (662 SE2d 895) (2008) ("Even though [the defendant] attempted to provide innocent explanations for his acts, the jury was authorized to reject his version of events, particularly in view of his conflicting statements to police.").

[32] *See Stokes v. State*, 327 Ga. App. 511, 513 (759 SE2d 585) (2014) (holding that evidence was sufficient to sustain burglary conviction when defendant was in the area of the burglary during relevant time period and when his DNA was found on a cigarette butt inside the residence with no other explanation); *see also In the Interest of D. J. E.*, 266 Ga. App. 807, 810 (1) (598 SE2d 108) (2004) (holding that juvenile's fingerprints at the crime scene, with the lack of an explanation for their presence, provided necessary circumstantial evidence to infer his participation in the crime); *cf. Anthony v. State*, 85 Ga. App. 119, 121 (68 SE2d 150) (1951) (holding that evidence consisting solely of fingerprint on a pinball machine's money box was insufficient to sustain conviction when machine was located in a public place and was generally accessible, and it was not shown where on the machine the money box was located, such that the print could have been left on the machine at some time other than the commission of the crime, *i.e.*, the print could have been left during innocent play).