**THIRD DIVISION
DILLARD, C. J.,
GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**June 24, 2019**

# In the Court of Appeals of Georgia

A19A0503. ELKINS v. THE STATE.

DILLARD, Chief Judge.

Following a jury trial, Karimah Elkins was convicted of evidence tampering. On appeal, Elkins argues that the evidence was insufficient to support her conviction and the trial court erred in denying a motion to sever her trial from that of her son, De'Marquise Elkins. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that on the morning of March 21, 2013, Dominique Lang encountered De'Marquise while walking to his uncle's house; and after a brief conversation, De'Marquise asked Lang if he had "ever robbed somebody before." Lang responded that he had not, and the two began walking together. De'Marquise then showed Lang the handle of a gun on

---

[1] *See, e.g.*, *Morris v. State*, 340 Ga. App. 295, 295 (797 SE2d 207) (2017).

his waist, and said "I thought you were Mexican, so I was fixing to rob you." Later, Lang saw a woman, S. W., walking down the street with a baby stroller, at which point De'Marquise cut in front of Lang to confront her. De'Marquise approached S. W. and told her to give him her purse, but she refused. When S. W. continued to shun his repeated demands for her purse, De'Marquise pulled a small black and brown gun out of his pocket and struck her in the face with it.

A struggle then ensued between De'Marquise and S. W., during which her baby, A. S., was sitting in the stroller between them; and eventually, De'Marquise began threatening the baby. Nevertheless, after S. W. persisted in her refusal to give De'Marquise her purse, he counted five seconds aloud, walked around to the other side of the stroller, and fired a shot at the ground. De'Marquise then attempted to shoot S. W. in the head, but she ducked and was instead shot in the leg. Finally, De'Marquise pointed the gun at A. S. and fired a third shot, and Lang "took off running." S. W. tried to perform CPR on A. S., and he was later taken to the hospital for treatment, but did not survive.[2]

---

[2] During the investigation that ensued, an autopsy was performed on A. S., and it confirmed that "[h]e died as a result of a gunshot wound to the head."

Later the same morning, sometime before 11:45 a.m., De'Marquise visited a friend, D. W., at her apartment, and just before leaving, he asked if he could hide a revolver under her couch.[3] D. W., who had grown up with De'Marquise and his sister (Sabrina Elkins), agreed, and he hid the gun under her loveseat. The same day, some time after De'Marquise left, Elkins and Sabrina also visited D. W. While there, Elkins and Sabrina lifted D. W.'s loveseat and retrieved a black revolver from underneath it. Then, one of De'Marquise's relatives, R. E., who had been upstairs sleeping, came downstairs, took the gun from Sabrina, and unloaded it. After doing so, R. E. gave the gun and bullets to Elkins before she and Sabrina left the apartment.

The next day, March 22, 2013, W. M., Elkins's good friend, met her and Sabrina, and drove them to a fishing hole where he and Elkins had been fishing "lots of times." While there, W. M. did not see Elkins or Sabrina with a gun, and he did not see them "do anything." But at one point when Elkins and Sabrina were standing together near the water, W. M. heard a splash. W. M. then drove the two women back to Elkins's house, which he found "kind of puzzling." Later, after being questioned by police officers, W. M. went back to the pond and showed the officers where he

---

[3] D. W. testified that De'Marquise visited her apartment on March 22, 2013, but surveillance footage presented at trial showed that the visit actually occurred on the same morning of the murder, March 21, 2013.

heard the splash. Then, on March 26, 2013, law-enforcement officers returned to the pond with a volunteer from Brunswick, Georgia's Emergency Management Agency Search and Recovery Squad, and discovered a "small revolver-type handgun" floating in it. Immediately after he retrieved the firearm, the volunteer gave it to a nearby law-enforcement officer. The officer examined the gun and determined that it was a .22 caliber revolver with no live rounds or empty shell casings inside.

Ultimately, as a result of the investigation into A. S.'s murder, Elkins was charged with making a false statement to law enforcement and tampering with evidence. She was jointly indicted with several others,[4] including De'Marquise, whose myriad charges included malice murder, felony murder, aggravated assault, attempted armed robbery, and aggravated assault.[5] And after the trial court denied the motion to sever her trial from that of De'Marquise, they proceeded to a joint jury trial, after which Elkins was convicted of tampering with evidence but acquitted of making

---

[4] The indictment also charged Lang and Sabrina with various offenses, but De'Marquise was Elkins's only co-defendant at trial.

[5] In addition to the charges arising from his attack on S. W. and murder of A. S., De'Marquise was also charged with and tried for crimes arising from an unrelated robbery and shooting he perpetrated on March 11, 2013. While evidence of the separate attack was presented at his joint trial with Elkins, her charges related only to the shooting death of A. S. on March 22, 2013.

4

a false statement to law enforcement. Elkins then filed a motion for new trial, and following a hearing, the trial court granted the motion in part—as to sentencing issues—and denied it in part as to all other claims. This appeal by Elkins follows.[6]

1. Elkins first argues that the evidence was insufficient to support her conviction for evidence tampering because the State failed to prove that the gun she threw in the pond was the same gun used to murder A. S. We disagree.

When a criminal conviction is appealed, the evidence must be "viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence."[7] And in evaluating the sufficiency of the evidence to support a conviction, we do not weigh the evidence or determine witness credibility but only resolve whether "a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[8] Accordingly, the jury's verdict will

---

[6] De'Marquise was convicted of all charged offenses. He has appealed his convictions, and his case is currently pending in the Supreme Court of Georgia. *See Elkins v. State*, Case No. S19A0331.

[7] *Howard v. State*, 340 Ga. App. 133, 136 (1) (796 SE2d 757) (2017); *see Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[8] *Howard*, 340 Ga. App. at 136 (1) (punctuation omitted); *accord Joiner v. State*, 299 Ga. App. 300, 300 (682 SE2d 381) (2009); *see Jackson*, 443 U.S. at 319 (III) (B).

be upheld so long as "there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[9] With these guiding principles in mind, we turn now to Elkins's specific challenge to the sufficiency of the evidence to support her evidence-tampering conviction.

Here, the indictment charged Elkins with

the offense of tampering with evidence ([OCGA §] 16-10-94) for that the said accused between the 21st day of March, 2013, and the 25th day of March, 2013, the exact date of the offense being unknown to the grand jury . . . did knowingly conceal physical evidence, to wit: A .22 caliber revolver used in the shooting death of [A. S.], by throwing said firearm into a salt water pond with the intent to obstruct the prosecution of another person, to wit: De'Marquise Elkins for the crime of murder, a felony, all said act being contrary to the laws of said State . . . .[10]

OCGA § 16-10-94 (a) provides:

A person commits the offense of tampering with evidence when, with the intent to prevent the apprehension or cause the wrongful apprehension of any person or to obstruct the prosecution or defense of any person, he knowingly destroys, alters, conceals, or disguises physical evidence or makes, devises, prepares, or plants false evidence.

---

[9] *Howard*, 340 Ga. App. at 136 (1) (punctuation omitted); *accord Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001).

[10] (Capitalization omitted).

In challenging the sufficiency of the evidence to support her conviction, Elkins primarily argues that the State failed to prove that the firearm she disposed of was the same gun used to murder A. S. In support, she notes the lack of physical evidence found on the gun such as DNA or fingerprints, and quotes a forensic report submitted at trial, stating the bullet that killed A. S. was consistent with being fired "from a large number of different types of firearms produced by a wide variety of manufacturers." The report further stated that, although the forensic consultant did not have exact numerical data (because the type of rifle used had been produced for nearly a century), it would be "reasonable to expect" that over a million of such rifles had been produced. Finally, Elkins notes that Lang, the sole witness to the murder, testified he did not know what De'Marquise did with the gun.

It is undisputed that there was no direct physical or testimonial evidence to prove that Elkins took the murder weapon directly from De'Marquise and threw it in the pond. But although the State's case against Elkins was entirely circumstantial, a criminal conviction may be based upon circumstantial evidence if "the proved facts are not only consistent with the hypothesis of guilt, but exclude every other

7

reasonable hypothesis but the guilt of the accused."[11] And when the evidence meets this test, "circumstantial evidence is as probative as direct evidence, and whether this burden has been met is a question for the jury."[12] Furthermore, when the jury is authorized to find that the evidence, though circumstantial, excluded every reasonable hypothesis except the defendant's guilt, the verdict will not be disturbed "unless the verdict is insupportable as a matter of law."[13] Lastly, although circumstantial evidence must "exclude every other reasonable hypothesis but the defendant's guilt, the evidence need not exclude every inference or hypothesis."[14]

In this case, there was ample circumstantial evidence to support a jury finding that it excluded every *reasonable* hypothesis except Elkins's guilt. And while Elkins summarily concludes that "[o]ne reasonable hypothesis is that the pond gun was a

---

[11] *Jones v. State*, 340 Ga. App. 142, 149 (2) (796 SE2d 765) (2017) (punctuation omitted); *accord Johnson v. State*, 291 Ga. App. 253, 254 (661 SE2d 642) (2008); *see also* OCGA § 24-14-6 ("To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused.").

[12] *Jones*, 340 Ga. App. at 149 (2); *accord Johnson*, 291 Ga. App. at 254.

[13] *Jones*, 340 Ga. App. at 149 (2); *accord Johnson*, 291 Ga. App. at 254.

[14] *Jones*, 340 Ga. App. at 149-50 (2); *accord Johnson*, 291 Ga. App. at 254.

different gun than the one used in [A. S.'s] murder," she provides no specific evidence to support her theory except that the type of bullet used in the murder *could have* been fired from different firearms. But given that Elkins obtained the gun before disposing of it the next day, this theory is purely speculative in nature.

Nevertheless, even when the circumstantial evidence "creates a strong suspicion of guilt, mere suspicion is insufficient to support a conviction."[15] But as detailed *supra*, the State presented sufficient circumstantial evidence to support Elkins's conviction. De'Marquise, *Elkins's son*, shot and killed A. S. on the morning of March 21, 2013. Later that morning, De'Marquise hid the murder weapon under D. W.'s loveseat, where Elkins and Sabrina retrieved a firearm shortly thereafter. The next day, W. M., Elkins's good friend, drove her and Sabrina to a fishing pond, and while the two women were near the pond, W. M. heard a splash. And ultimately, law enforcement recovered a firearm matching the description of the murder weapon in the exact place where W. M. heard the splash. There was, then, no evidence presented at trial to support a *reasonable* inference that Elkins disposed of a different gun than the one used by her son to commit murder.

---

[15] *Kiser v. State*, 327 Ga. App. 17, 21 (3) (755 SE2d 505) (2014) (punctuation omitted); *accord Mims v. State*, 278 Ga. App. 282, 284 (2) (628 SE2d 596) (2006).

Furthermore, although Elkins argues that the type of bullet that killed A. S. could have been fired from a number of different firearms, there was *also* evidence that it could have been fired from the suspected murder weapon. For example, at trial, R. E. testified that the revolver he gave Elkins looked "similar" to the murder weapon, and the man who retrieved the gun from the pond testified that the murder weapon, which he viewed at trial, "appear[ed] to be the gun [he] pulled out of the pond that morning." Additionally, the forensic report relied on by Elkins also revealed the bullet that killed A. S. "possessed rifling characteristics consisting of eight lands and grooves with a right twist[,]" which is consistent with being fired from a large number of different types of firearms, *including* the one recovered from the pond. This evidence supported the jury's apparent conclusion that the bullet that killed A. S. was fired from the revolver Elkins threw into the pond.[16]

In sum, it is the jury's role to "resolve evidentiary conflicts, determine witness credibility, and decide the reasonableness of hypotheses based upon the

---

[16] Elkins does not appear to dispute that she disposed of a firearm in the fishing pond, instead arguing only that the firearm she threw into the pond was not the same gun used to kill A. S.

10

circumstantial evidence."[17] And here, there was more than sufficient circumstantial evidence to support the jury's verdict.[18]

2. Elkins next argues that the trial court erred in denying the motion to sever her trial from De'Marquise's trial. This claim is likewise without merit.

Prior to trial, Elkins filed a motion to sever her trial from that of her son, arguing that the jury would have "insurmountable difficulty" in distinguishing her alleged acts from his alleged acts. She further contends that the State planned to use

---

[17] *Martinez v. State*, 303 Ga. App. 71, 74 (1) (692 SE2d 737) (2010); *accord Ferrell v. State*, 312 Ga. App. 122, 125 (1) (717 SE2d 705) (2011).

[18] *See Thornton v. State*, 331 Ga. App. 191, 198 (3) (770 SE2d 279) (2015) (affirming a conviction for evidence tampering when the defendant remarked to others that she needed to dispose of a bullet casing because it had her fingerprints on it and several weeks later, investigators inspected the trash at her residence and found a spent casing in a soft drink can that had been cut in half); *Kirchner v. State*, 322 Ga. App. 275, 280 (1) (a), 283-85 (3) (a) (i)-(ii) (744 SE2d 802) (2013) (affirming a conviction for evidence tampering based on circumstantial evidence when defendant's son sold marijuana in the cul-de-sac by their home and had a safe in which drugs and drug paraphernalia were found and the defendant convinced officers to violate protocol and let her into her house under false pretenses so she could destroy several baggies containing marijuana by washing them in the dishwasher, even though she later argued that someone else could have washed the baggies, such as the "young people" who were often at her house); *Phillips v. State*, 242 Ga. App. 404, 404-05 (530 SE2d 1) (2000) (holding that the evidence was sufficient to support tampering-with-evidence charge when, *inter alia*, the defendant was the only person in the kitchen at the time the warrant was executed and a plastic bag containing cocaine residue was placed in the garbage disposal).

her familial relationship with De'Marquise to "muddy the waters" as to who did what and when on the day of the shooting and during its aftermath. In denying the motion, the trial court found that there was nothing particularly confusing about the evidence in this case and there was no danger that the evidence against her would be considered against her co-defendant.[19]

OCGA § 17-8-4 (a) provides that when two or more defendants are jointly indicted for a noncapital offense, "such defendants may be tried jointly or separately in the discretion of the trial court." And a trial court's decision to deny a motion to sever "will be affirmed absent an abuse of discretion."[20] Nevertheless, a trial court

---

[19] Elkins correctly notes that, in ruling on her severance motion, the trial court improperly considered only whether there was a danger that evidence presented against her would be considered against De'Marquise, but not whether the evidence presented against him would be considered *against her.* Indeed, our Supreme Court has instructed that, in ruling on a motion to sever, the trial court should consider whether there is a danger that evidence admissible against one defendant will be improperly considered against another defendant. *See infra* note 24 & accompanying text. Regardless, any error by the trial court in this respect was harmless because, for the reasons set forth *infra*, Elkins has not shown that she was prejudiced by the trial court's denial of her motion to sever. *See, e.g.*, *Flores v. State*, 308 Ga. App. 368, 372 (2) (707 SE2d 578) (2011) ("Because he has not shown that he was prejudiced by the refusal to sever, no abuse of discretion is demonstrated.").

[20] *Cuyler v. State*, 344 Ga. App. 532, 534 (1) (811 SE2d 42) (2018) (punctuation omitted); *see Cain v. State*, 235 Ga. 128, 128-29 (218 SE2d 856) (1975) ("[Because] the grant or denial of a motion to sever is left to the discretion of the trial court, its ruling will be overturned only for an abuse of discretion."); *Avellaneda v.*

should sever the trials of co-defendants whenever it is "necessary to achieve a fair determination of the guilt or innocence of a defendant."[21] But in order to show entitlement to a severance, "the burden is on the defendant to do more than raise the possibility that a separate trial would give him a better chance of acquittal."[22] Indeed, to satisfy this burden, a defendant "must make a clear showing of prejudice and a consequent denial of due process."[23] Finally, our Supreme Court has instructed that, in determining whether to grant a motion to sever, a trial court should consider:

> (1) whether the number of defendants will confuse the jury as to the evidence and the law applicable to each defendant; (2) whether, despite

---

*State*, 261 Ga. App. 83, 87 (581 SE2d 701) (2003) ("Whether to grant or deny a severance should be decided on a case-by-case basis and is an issue that is left to the discretion of the trial court.").

[21] *Cuyler*, 344 Ga. App. at 534 (1) (punctuation omitted); *see Morris v. State*, 204 Ga. App. 437, 438 (1) (419 SE2d 733) (1992) ("Despite the benefits of joinder, it is clear that an accused's right to a fair trial takes precedence. If the consolidation of defendants at trial hinders a fair determination of each defendant's guilt or innocence, then the defendants must be tried separately." (punctuation omitted)).

[22] *Cuyler*, 344 Ga. App. at 534-35 (1) (punctuation omitted); *accord Cain*, 235 Ga. at 129.

[23] *Cuyler*, 344 Ga. App. at 535 (1) (punctuation omitted); *see Green v. State*, 274 Ga. 686, 688 (2) (558 SE2d 707) (2002) ("It is incumbent upon the defendant who seeks a severance to show clearly that he will be prejudiced by a joint trial, and in the absence of such a showing, the trial court's denial of a severance motion will not be disturbed.").

cautionary instructions from the court, there is a danger that evidence admissible against one defendant will be improperly considered against another defendant; and (3) whether the defenses of the defendants are antagonistic to each other or to each other's rights of due process.[24]

Bearing these guiding principles in mind, we will now consider Elkins's specific claim of error.

Elkins concedes that "[t]he number of defendants in this case likely did not create confusion of the evidence or the law," and she has never alleged that she and De'Marquise had antagonistic defenses. In fact, Elkins acknowledges that the only factor at issue before the trial court was whether, despite cautionary instructions, there was a danger that the evidence admissible against De'Marquise would be improperly considered against her.

Specifically, Elkins's argues that she was entitled to a severed trial because the evidence against her was minimal, while the evidence against De'Marquise was substantial, making it probable that the significant amount of evidence presented against him during their eight-day trial overwhelmed the jury. And she identifies some of that evidence as pictures of the deceased baby, "wrenching testimony" from

---

[24] *McClendon v. State*, 299 Ga. 611, 615 (3) (791 SE2d 69) (2016) (punctuation omitted); *accord Satterfield v. State*, 256 Ga. 593, 596 (3) (351 SE2d 625) (1987).

his parents, an explanation of the autopsy results, testimony regarding an unrelated shooting and robbery, and the presentation of "30 some odd documents." According to Elkins, there was "no way" this evidence did not "spillover" to her in the mind of the jurors. Finally, Elkins claims that the evidence presented against De'Marquise was even more prejudicial to her than in other cases because she is his mother, and in the jury's view, she "created a baby murderer."

Although there was substantial evidence presented against De'Marquise as to serious charges that Elkins *did not face*, the evidence presented against her to support her sole conviction for evidence tampering, summarized *supra*, was brief, straightforward, and related only to a specific set of actions she took over a two-day period following the murder. Thus, we agree with the trial court that there was nothing particularly confusing about the evidence supporting Elkins's conviction.

Nevertheless, we acknowledge that the evidence presented against De'Marquise—who faced 11 charges, including malice murder of a baby—was more voluminous, substantial, and damning than the evidence presented against Elkins. But De'Marquise played no role in Elkins's crime of evidence tampering, and she played no role in any of his more serious offenses, except to the extent that she illegally disposed of evidence used in a murder that she was not implicated in. Indeed, while

15

Elkins details evidence presented against De'Marquise for much more egregious crimes, she fails to explain how any of that evidence, which was mostly irrelevant to the charge against her, prejudiced her or could have confused the jury in determining her guilt or innocence of evidence tampering.

Absent the identification of evidence suggesting her involvement in any of De'Marquise's crimes that could have confused the jury, Elkins merely speculates that, given the severity and amount of the evidence presented against her son, it was impossible for the jury to decide who did what and when on the day of the crime. But as detailed *supra*, the evidence was straightforward as to her alleged actions following A. S.'s murder, and it is *her* burden to "do more than raise the possibility that a separate trial would give [her] a better chance of acquittal."[25] Indeed, the mere fact that the case against one defendant was "stronger than the case against the other does not necessitate a separate trial."[26]

Moreover, as explained *infra* in Division 1, there was ample evidence to support Elkins's conviction, and the jury could not have found her guilty of any of

---

[25] *Marquez v. State*, 298 Ga. 448, 449 (2) (782 SE2d 648) (2016) (punctuation omitted).

[26] *Moon v. State*, 288 Ga. 508, 510 (2) (705 SE2d 649) (2011) (punctuation omitted).

De'Marquise's more serious crimes merely due to her association with him because she was not charged with any of those offenses.[27] Additionally, evidence related to A. S.'s murder would have been admissible at a separate trial because the State was required to establish that she disposed of the murder weapon to hinder the prosecution of De'Marquise.[28] Furthermore, the jury demonstrated its ability to decide each case separately, rather than assuming Elkins's guilt based solely on the criminal conduct of her son, because it acquitted her of making false statements to police.[29] And in

---

[27] *See, e.g.*, *Green*, 274 Ga. at 688 (2) (affirming the trial court's denial of a motion for a severed trial when, *inter alia*, the three defendants played separate roles in the murder and assault).

[28] *See Westmoreland v. State*, 287 Ga. 688, 694 (5) (699 SE2d 13) (2010) (affirming the denial of a motion for a severance when, *inter alia*, "almost all evidence admissible against [a co-defendant] was also admissible against [the other co-defendant]; therefore, there was little likelihood that the jury would confuse the evidence against each defendant"); *Bland v. State*, 264 Ga. 610, 611 (1) (449 SE2d 116) (1994) ("Whether evidence of one offense would be admissible in a trial of the other if severance is granted is a relevant consideration."); *see also* OCGA 16-10-94 (a) ("A person commits the offense of tampering with evidence when, *with the intent to prevent the apprehension or cause the wrongful apprehension of any person or to obstruct the prosecution or defense of any person*, he knowingly destroys, alters, conceals, or disguises physical evidence or makes, devises, prepares, or plants false evidence." (emphasis supplied)).

[29] *See Rabie v. State*, 294 Ga. App. 187, 189-90 (1) (668 SE2d 833) (2008) (rejecting defendant's argument that he was entitled to a severance from his brother's trial because they had the same last name, which may have confused the jury as to what evidence applied to which brother when, *inter alia*, the jury convicted one

17

doing so, the jury appears to have heeded the court's instruction that it "must consider the guilt or innocence of each defendant separately."

In sum, it is incumbent upon a defendant who seeks a severance to show *"clearly* that [he or she] will be prejudiced by a joint trial, and in the absence of such a showing, the trial court's denial of a severance motion will not be disturbed."[30] And here, given Elkins's failure to identify any evidence presented against De'Marquise that could have confused the jury regarding Elkins's prosecution for evidence tampering, she has not shown clear evidence of prejudice.[31] Under such

brother and acquitted the other brother of the same offense, indicating that jury was able to consider each charge separately); *Cartledge v. State*, 285 Ga. App. 145, 147 (2) (645 SE2d 633) (2007) (affirming the trial court's denial of defendant's motion for a severance because, *inter alia,* the jury failed to convict the defendant of six of fourteen charges alleged against him, indicating an ability to decide each charge separately"); *Jordan*, 281 Ga. App. at 424 (holding that the trial court did not err in denying a motion for severance because, *inter alia*, "the jury acquitted [the defendant] of kidnapping with bodily injury and aggravated assault of [the victim], indicating the ability to decide each case separately").

[30] *Nelms v. State*, 285 Ga. 718, 720 (2) (a) (681 SE2d 141) (2009) (punctuation omitted and emphasis supplied); *accord Green*, 274 Ga. at 688 (2).

[31] On appeal, Elkins relies almost exclusively on *Price v. State*, 155 Ga. App. 844 (273 SE2d 225) (1980) in arguing that a severance of her trial was warranted. But *Price* is distinguishable because, unlike here, the co-defendants in *Price* were tried for and convicted of robbery when the evidence of defendant's involvement in the robbery was so slight that he may have been convicted by association. *See id.* at 844-85 (1). Here, Elkins and De'Marquise were tried for different, albeit related, crimes,

18

circumstances, we cannot say the trial court abused its discretion in denying Elkins's motion for a severed trial.[32]

For all these reasons, we affirm Elkins's conviction.

*Judgment affirmed. Gobeil and Hodges, JJ., concur.*

---

and the evidence against them for those crimes was distinct, such that it is not likely that Elkins was convicted solely due to her association with De'Marquise.

[32] *See Ballard v. State*, 297 Ga. 248, 255 (1) (773 SE2d 254) (2015) (affirming the trial court's denial of a defendant's motion for a severed trial because, *inter alia*, "with only two defendants there was virtually no likelihood that the jury would confuse the evidence or the law, or that the evidence against one defendant would be considered against the other" (punctuation omitted)); *Bland*, 264 Ga. at 611 (1) ("The absolute right to severance exists only where offenses have been joined solely because they are of the same or similar character. [When], however, as here, joinder is based on a series of acts connected together, severance lies within the sound discretion of the trial court." (punctuation and citation omitted)); *Ledbetter v. State*, 202 Ga. App. 524, 525 (2) (414 SE2d 737) (1992) (holding the trial court did not abuse its discretion in denying a motion for a severance when "each of the counts with which the appellant was charged was[, as here,] clearly distinguished from her co-defendant's unrelated charges in order to avoid confusion by the jury and that these counts were tried on the theory that they constituted a common scheme or plan with her co-defendant"); *Gardner v. State*, 172 Ga. App. 677, 681 (9) (324 SE2d 535) (1984) ("We do not find the fact of kinship to be so prejudicial to appellant as to demand a severance."); *see also supra* notes 28-29.