**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN, P. J., and BROWN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**February 16, 2021**

# In the Court of Appeals of Georgia

A20A1764. SAMBOU v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Mamadou Sambou on one count of identity fraud and one count of forgery in the first degree. Sambou now appeals his convictions and the denial of his motion for new trial, arguing (1) the evidence supporting his first degree forgery conviction was insufficient; (2) the trial court erred in sentencing him as a recidivist under OCGA § 17-10-7 (a), based upon his 2016 guilty plea to a felony in the State of New York; (3) the trial court erred in failing to apply the rule of lenity by sentencing him for the felony of identity fraud rather than the misdemeanor of giving a false name to a law enforcement officer; and (4) the trial court erred in denying his claim that defense counsel rendered ineffective assistance. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that in 2017, Moustapha Ndiaye was living in Savannah and employed by Delta Global Services at the Savannah airport. Ndiaye also worked part-time as an Uber driver, and he was interested in eventually obtaining a taxi license. That same year, Ndiaye and a friend planned a trip from Savannah to Dakar, Senegal, which required flying to LaGuardia Airport in New York City and then transferring to John F. Kennedy International Airport to catch their international flight. Ndiaye's friend arranged for Sambou—who worked as a taxi driver—to give them a ride from LaGuardia to JFK. During that drive, Ndiaye and Sambou struck up a conversation, in which Sambou told Ndiaye that he could help him with obtaining a taxi driver's license. Consequently, several weeks later, Ndiaye traveled to Atlanta, where Sambou was currently living, and provided Sambou with his driver's license, social-security card, and records of his driving history for Sambou to make the required copies of those documents for the taxi license application process. Ndiaye stayed at Sambou's residence that night and then returned home to Savannah the next day, taking all of his original documents with him. And as promised, Sambou did in fact succeed in helping Ndiaye obtain a taxi license.

---

[1] *See, e.g.*, *Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

2

In the early morning hours of May 9, 2017, a Powder Springs police officer initiated a traffic stop of a Chevrolet Suburban after observing the vehicle fail to dim its headlights for oncoming traffic and maintain its lane of travel. After a second officer arrived on the scene, the first officer approached the vehicle, at which point the driver told him that his name was Moustapha Ndiaye. When the first officer asked him if he still lived in Savannah, the driver initially claimed he did but then stated that he currently lived in Douglasville and was returning home after visiting his daughter, who was ill and hospitalized at Children's Healthcare of Atlanta. And when questioned further by that officer about the registration for the vehicle he was driving, which did not match the name provided, the driver responded that it belonged to Moussa Sambou, whom he claimed was a friend of his father. Ultimately, the first officer issued the driver a traffic citation, using the background information the driver provided, and informed the driver of the date he would need to appear in court if he wanted to contest the traffic charges rather than pay the fine.

A little over one month later, Ndiaye received a letter from the Powder Springs Municipal Court informing him that he missed his scheduled court date and that his driver's license would be suspended if he failed to pay the fine for the traffic citation issued to him on May 9, 2017. Needless to say, Ndiaye was confused by this letter

3

because he had never been to Powder Springs and certainly had not been there on the date in question. He was also, understandably, alarmed that his driver's license was being threatened with suspension, and that his wife now harbored suspicions he had been traveling to the Atlanta area without her knowledge. As a result, Ndiaye immediately contacted the Powder Springs Police Department and scheduled an in-person meeting with an officer to try to resolve the matter. So, on July 26, 2017, Ndiaye and his wife traveled to Powder Springs and met with an officer to discuss the traffic citation. And during the meeting, Ndiaye explained to the officer that he did not own or drive the Chevrolet Suburban described in the citation. Additionally, after reviewing the video from the body camera of the officer who initiated the traffic stop and issued the citation, Ndiaye informed the interviewing officer that the driver was his friend, Mamadou Sambou, and that he had never given him permission to use his personal information to create a fraudulent driver's license.

Agreeing that the driver in the video did not appear to be Ndiaye, the officer turned the matter over to one of the department's detectives, who also met with Ndiaye to get information about Sambou. Then, using that information, the detective began conducting online research to determine if she could locate Sambou's current address. And shortly thereafter, the detective matched Sambou's name with a New

4

York address and, later, with a Florida driver's license, which had a photograph matching the license provided to the Powder Springs officer at the time of the traffic stop. And using a phone number associated with that driver's license, the detective found a picture of Sambou on Facebook and several addresses, including the Douglasville address mentioned during the traffic stop. All the photographs of Sambou the detective discovered appeared to match the individual shown in the officer's body-cam video. In addition, the detective determined that the vehicle noted in the traffic citation was owned by Sambou's father.

Eventually, the State charged Sambou, via accusation, with one count of identity fraud and one count of forgery in the first degree. And prior to trial, the State filed a notice of intent to offer evidence in aggravation of punishment and another notice of intent to present evidence of prior bad acts, both of which were based on, *inter alia*, Sambou's conviction in the State of New York for the felony offense of offering a false instrument for filing in the first degree. Sambou opposed the prior bad acts evidence, but following a pretrial hearing, the trial court ruled to admit the evidence.

The case then proceeded to trial, during which the State presented the foregoing evidence and played the video of the traffic stop recorded by the officer's

5

body cam. In addition, an investigator with the New York Department of Motor Vehicles testified for the State as to Sambou's prior bad acts. Then, after the State rested, Sambou's wife testified in his defense, claiming that she and her husband were in New York around the time of the Powder Springs traffic stop. Nevertheless, at the conclusion of the trial, the jury found Sambou guilty as charged. And following a sentencing hearing, the trial court sentenced Sambou as a recidivist based on the prior felony conviction in New York.

Subsequently, Sambou obtained new counsel and filed a motion for new trial, in which he argued, *inter alia*, that his trial counsel rendered ineffective assistance. The trial court then held a hearing on the matter, during which Sambou's trial counsel testified regarding his representation. And after both Sambou and the State presented their arguments, the trial court denied the motion. This appeal follows.

1. Sambou contends that the State failed to present sufficient evidence to support his conviction on the charge of forgery in the first degree. We disagree.

When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption

of innocence.[2] And, of course, in evaluating the sufficiency of the evidence, we "do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[3] The jury's verdict will be upheld, then, so "long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[4] Bearing these guiding principles in mind, we turn to Sambou's specific challenge to the sufficiency of the evidence supporting his first-degree forgery conviction.

OCGA § 16-9-1 (b) provides:

A person commits the offense of forgery in the first degree when with the intent to defraud he or she knowingly makes, alters, or possesses any writing, other than a check, in a fictitious name or in such

---

[2] *See English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010) (noting that following conviction, an appellant no longer enjoys a presumption of innocence).

[3] *Jones v. State*, 318 Ga. App. 26, 29 (1) (733 SE2d 72) (2012) (punctuation omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (noting the relevant question is, after viewing the evidence in the light most favorable to the prosecution, could any rational jury found the essential elements of the crime beyond a reasonable doubt).

[4] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted); *accord Westbrooks v. State*, 309 Ga. App. 398, 399-400 (1) (710 SE2d 594) (2011).

7

manner that the writing as made or altered purports to have been made by another person, at another time, with different provisions, or by authority of one who did not give such authority and utters or delivers such writing.

And in this case, the accusation charged Sambou with first-degree forgery by alleging that he "on or about the 9th day of May, 2017, with intent to defraud, did knowingly possess a driver's license . . . in the fictitious name of Moustapha Ndiaye, and did utter and deliver said writing. . . ." Indeed, the State presented evidence that when stopped for traffic violations, Sambou provided the Powder Springs police officer with a driver's license bearing his own photograph but Moustapha Ndiaye's name and Savannah address. The State also proffered evidence that although Ndiaye provided Sambou with a copy of his driver's license so that Sambou could help him obtain a license to operate a taxi, he did not give Sambou permission to use it for his own duplicitous purposes or know that he would do so.

Nevertheless, Sambou makes much of the Powder Springs police officer—who initiated the traffic stop—not testifying at trial, arguing the State failed to present evidence that he actually delivered the fictitious driver's license to anyone, as required by the forgery statute. But a criminal conviction may be based upon circumstantial evidence if "the proved facts are not only consistent with the

8

hypothesis of guilt, but exclude every other reasonable hypothesis but the guilt of the accused."[5] Indeed, when the evidence meets this test, circumstantial evidence is "as probative as direct evidence, and whether this burden has been met is a question for the jury."[6] And importantly, when the jury is authorized to find that the evidence, though circumstantial, excluded every reasonable hypothesis except the defendant's guilt, "the verdict will not be disturbed unless the verdict is insupportable as a matter of law."[7] Finally, although circumstantial evidence must exclude every other reasonable hypothesis but the defendant's guilt, the evidence "need not exclude every inference or hypothesis."[8]

---

[5] *Elkins v. State*, 350 Ga. App. 816, 819 (1) (830 SE2d 345) (2019) (punctuation omitted); *accord Johnson v. State*, 291 Ga. App. 253, 254 (661 SE2d 642) (2008); *see also* OCGA § 24-14-6 ("To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused.").

[6] *Elkins*, 350 Ga. App. at 819 (1) (punctuation omitted); *accord Johnson*, 291 Ga. App. at 254.

[7] *Elkins*, 350 Ga. App. at 819 (1) (punctuation omitted); *accord Johnson*, 291 Ga. App. at 254.

[8] *Elkins*, 350 Ga. App. at 819-20 (1) (punctuation omitted); *accord Johnson*, 291 Ga. App. at 254.

In this matter, the video from the body cam of the officer initiating the traffic stop appears to show Sambou hand something to the officer after he approaches the vehicle and, later, shows the officer hand something back to him. Additionally, during this interaction, the officer asks Sambou if he still lives in Savannah and, ultimately, Ndiaye received the letter from the Powder Springs Municipal Court warning him that his driver's license was about to be suspended at his Savannah address, both of which constitute evidence that Sambou delivered the forged driver's license to the officer during the traffic stop. Furthermore, at trial, the second officer—who assisted with the traffic stop—testified as to how traffic citations are generated, and implicit in his testimony was that the issuing officer uses information from the driver's license to generate the citation. Given these circumstances, the State presented sufficient evidence to support Sambou's conviction on the charge of forgery in the first degree.[9]

[9] *See Smith v. State*, 319 Ga. App. 164, 164-66 (1) (735 SE2d 153) (2012) (holding that evidence defendant identified herself and signed Miranda form with her sister's name when questioned by police following serious motor vehicle accident was sufficient to support defendant's conviction for forgery in the first degree); *Bryant v. State*, 286 Ga. App. 493, 496-97 (1) (d) (649 SE2d 597) (2007) (finding that evidence was sufficient to support conviction for forgery when, in custody, defendant signed a name on waiver-of-rights form that was not his actual name). Although Sambou has not challenged the sufficiency of the evidence supporting his conviction on the charge of identity fraud, we reviewed the record and find the evidence sufficient to enable a jury to conclude beyond a reasonable doubt that he was guilty of that crime. *See Jackson*, 443 U.S. at 319 (III) (B) ("Once a defendant has been

10

2. Sambou also contends that the trial court erred in sentencing him as a recidivist under OCGA § 17-10-7 (a) based on a prior conviction in New York. Again, we disagree.

In the context of a criminal conviction, "a sentence is void if the court imposes punishment that the law does not allow."[10] And such a sentence "may be vacated at any time in any court where it becomes material to the interest of the parties to consider it."[11] Moreover, this is true even for defendants who plead guilty because "a defendant who knowingly enters into a plea agreement does not waive the right to challenge an illegal and void sentence."[12] Importantly, whether a defendant was

---

found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.").

[10] *von Thomas v. State*, 293 Ga. 569, 571 (2) (748 SE2d 446) (2013) (punctuation omitted); *accord Rooney v. State*, 287 Ga. 1, 2 (2) (690 SE2d 804) (2010).

[11] *Little v. State*, 327 Ga. App. 252, 253 (758 SE2d 133) (2014) (punctuation omitted).

[12] *Bell v. State*, 294 Ga. 5, 8 (2) (749 SE2d 660) (2013); *accord Nazario v. State*, 293 Ga. 480, 487 (2) (c) (746 SE2d 109) (2013) (noting that a guilty plea does not waive a challenge to an illegal sentence); *see also Humphrey v. State*, 297 Ga. 349, 350 (773 SE2d 760) (2015) ("[A]s we have indicated in a number of cases, the consent of the parties cannot validate a void sentence.").

properly sentenced as a recidivist under OCGA § 17-10-7 is "subject to de novo review."[13]

Turning to the section of that statute applicable here, OCGA § 17-10-7 (a) provides:

> Except as otherwise provided in subsection (b) or (b.1) of this Code section, any person who, after having been convicted of a felony offense in this state or having been convicted under the laws of any other state or of the United States of a crime which if committed within this state would be a felony and sentenced to confinement in a penal institution, commits a felony punishable by confinement in a penal institution shall be sentenced to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he or she stands convicted, provided that, unless otherwise provided by law, the trial judge may, in his or her discretion, probate or suspend the maximum sentence prescribed for the offense.

---

[13] *Frey v. State*, 338 Ga. App. 583, 586 (3) (790 SE2d 835) (2016); *see Mathis v. State*, 336 Ga. App. 257, 257 (784 SE2d 98) (2016) (holding that because appeal regarding whether defendant was properly sentenced as a recidivist is a question of law, we review the trial court's decision *de novo*).

Simply put, this statute "imposes maximum sentences for any person convicted of a felony who was previously convicted under the laws of any other state of a crime which if committed within this state would be a felony."[14]

Here, in his initial brief, Sambou argued that the trial court erred in sentencing him as a recidivist because the State failed to show that he was represented by counsel when he pleaded guilty to the offense in New York. And indeed, he is correct that "[i]n recidivist sentencing, the State bears the burden of showing both the existence of the prior guilty pleas and that the defendant was represented by counsel when he entered the pleas."[15] But Georgia's appellate courts have also "held that a defendant can waive a claim that such a prior conviction is invalid because the defendant was

---

[14] *Nelson v. State*, 277 Ga. App. 92, 99 (5) (625 SE2d 465) (2005) (punctuation omitted), *disapproved of on other grounds by Nordahl v. State*, 306 Ga. 15 (829 SE2d 99) (2019); *see Johnson v. State*, 281 Ga. App. 7, 10 (4) (635 SE2d 278) (2006) (noting that OCGA § 17-10-7 (a) generally provides that a person convicted in Georgia of a felony punishable by confinement in a penal institution must receive the maximum sentence provided for such offense if he or she was previously convicted under the laws of another state "of a crime which if committed within this state would be a felony" (punctuation omitted); *Woodson v. State*, 242 Ga. App. 67, 70 (4) (530 SE2d 2) (2000) (same), *disapproved of on other grounds by Nordahl*, 306 Ga. 15.

[15] *Bell v. State*, 328 Ga. App. 813, 813 (762 SE2d 827) (2014).

denied the assistance of counsel in connection with the conviction."[16] This is such a case. Sambou raised no objection to the introduction of his prior felony conviction, and his trial counsel acknowledged the existence of that conviction during the sentencing hearing. As a result, Sambou has waived this specific argument for appeal.[17]

In his reply brief to this Court, Sambou changes tack and instead argues that the trial court erred in sentencing him as a recidivist because the State failed to establish that his prior New York conviction was a crime, which, if committed in

[16] *von Thomas*, 293 Ga. at 573 (2); *see Hampton v. State*, 289 Ga. 621, 627 (6) (713 SE2d 851) (2011) ("[W]hile [defendant] objected to the court's consideration of [prior] uncounseled pleas [in aggravation of punishment], he did not obtain a ruling on his objection and therefore failed to preserve the issue for appeal." (punctuation omitted)), *disapproved of on other grounds by Nalls v. State*, 304 Ga. 168 (815 SE2d 38) (2018); *Rucker v. State*, 304 Ga. App. 184, 188 (2) (b) (ii) (695 SE2d 711) (2010) (holding that defendant in sentencing hearing failed to specify grounds for objecting to admission of prior battery and nuisance convictions, and thus waived for appeal issue of whether prior convictions could be used in aggravation of punishment and for recidivist treatment).

[17] *See Hampton*, 289 Ga. at 627 (6) ("[W]hile [defendant] objected to the court's consideration of [prior] uncounseled pleas [in aggravation of punishment], he did not obtain a ruling on his objection and therefore failed to preserve the issue for appeal." (punctuation omitted)); *Rucker*, 304 Ga. App. at 188 (2) (b) (ii) (holding that defendant in sentencing hearing failed to specify grounds for objecting to admission of prior battery and nuisance convictions, and thus waived for appeal issue of whether prior convictions could be used in aggravation of punishment and for recidivist treatment).

Georgia, would be considered a felony for which he was also confined.[18] But although this argument raises a cognizable void sentence claim, which we will review despite his failure to object to the use of his prior conviction,[19] we nonetheless disagree.

Recently, the Supreme Court of Georgia set forth the proper analysis for determining "whether a[n] . . . out-of-state conviction qualifies as a predicate

---

[18] Sambou did not raise this argument in his initial brief or during the hearing on his motion for new trial, and, as a general rule, "[a]n appellant who raises an argument for the first time in a reply brief is not entitled to have that argument considered." *City of Atlanta v. Mays*, 301 Ga. 367, 372, 801 SE2d 1, 5 (2017). Even so, Sambou did cursorily assert it in his amended motion for new trial, and given that an unlawful sentence can be challenged at any time, we shall address this issue here. *See supra* note 11.

[19] *See Butler v. State*, 354 Ga. App. 473, 480 (4) (841 SE2d 162) (2020) (finding that defendant raised cognizable void sentence claim regarding use of prior convictions to impose recidivist sentence, despite defendant's failure to object in trial court, when defendant did not challenge existence or validity of his prior convictions, but instead alleged prior convictions did not constitute felonies in Georgia); *Parham v. State*, 342 Ga. App. 754, 756 (1) n.1 (805 SE2d 264) (2017) (addressing defendant's claim that the trial court erred by sentencing him under the general recidivist statute rather than the more specific recidivist statute applicable to his convictions, holding that his claim raised a "cognizable" claim that his sentence was void even though he did not object to the imposition of a recidivist sentence in the trial court).

conviction under [OCGA § 17-10-7 (a)]."[20] Applying that analysis, a reviewing court must

> identify the [out-of-state] crime used to enhance [the defendant's] sentence under OCGA § 17-10-7 . . . [(a)], consider whether the crime is divisible, and then parse the crime's elements using the "formal categorical" or "modified categorical" approach. . . . After establishing the elements of the [out-of-state] predicate conviction, [it should] determine whether those elements would describe a felony under Georgia law.[21]

More specifically, when the out-of-state or federal offense "sets out a single (or 'indivisible') set of elements to define a single crime[,]" the sentencing court "lines up that crime's elements alongside those of the [state] offense and sees if they match."[22] And as alluded to *supra*, "[t]his comparison of statutory elements is what the federal courts refer to as the 'formal categorical' approach."[23] In contrast, the

---

[20] *Nordahl v. State*, 306 Ga. 15, 18 (1) (829 SE2d 99) (2019) (punctuation omitted); *accord Butler*, 354 Ga. App. at 480 (4).

[21] *Nordahl*, 306 Ga. at 24 (4) (punctuation omitted); *accord Butler*, 354 Ga. App. at 481 (4).

[22] *Nordahl*, 306 Ga. at 23 (3) (punctuation omitted); *accord Mathis v. United States*, 579 U.S. ___, (I) (A) (136 SCt 2243, 2248, 195 LE2d 604) (2016).

[23] *Nordahl*, 306 Ga. at 23 (3); *see, e.g.*, *Taylor v. United States*, 495 U. S. 575, 600 (IV) (110 SCt 2143, 109 LE2d 607) (1990).

"modified categorical" approach is applicable when a sentencing court is "confronted with a prior conviction for violating a statute that sets forth multiple crimes and is, thus, 'divisible.'"[24] For this narrow range of cases, "sentencing courts would need to look beyond the statutory elements of the crime to the charging paper and jury instructions used in a case."[25]

Here, in support of its request to have Sambou sentenced under OCGA § 17-10-7 (a), the State presented evidence that he pleaded guilty in the State of New York in 2016 to the felony offense of offering a false instrument for filing in the first degree, which is committed when a person

> knowing that a written instrument contains a false statement or false information, and with intent to defraud the state or any political subdivision, public authority or public benefit corporation of the state, he or she offers or presents it to a public office, public servant, public authority or public benefit corporation with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office, public servant, public authority or public benefit corporation . . . .[26]

---

[24] *Nordahl*, 306 Ga. at 23 (3) (punctuation omitted); *accord Taylor*, 495 U. S. at 602 (IV).

[25] *Nordahl*, 306 Ga. at 23 (3) (punctuation omitted).

[26] N.Y. Penal Law § 173.35 (1) (McKinney).

17

This statute is not divisible, and, therefore, we apply the "formal categorical" approach to determine if it matches a felony offense under Georgia law.[27] And a comparison of the elements shows that the Georgia felony that the New York offense of offering a false instrument for filing most closely resembles is OCGA § 16-10-20, which punishes false statements and writings and provides:

> A person who knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact; makes a false, fictitious, or fraudulent statement or representation; or makes or uses any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of state government or of the government of any county, city, or other political subdivision of this state shall, upon conviction thereof, be punished by a fine of not more than $1,000.00 or by imprisonment for not less than one nor more than five years, or both.

Indeed, both offenses punish using a writing or document that one knows contains false information for purposes connected to a government-related entity's interest in such document. Sambou nonetheless argues that the offenses are not comparable because the Georgia offense includes a willfulness requirement that the New York

---

[27] *See, e.g.*, *Nordahl*, 306 Ga. at 23 (3); *see also United States v. Edwards*, 836 F3d 831, 833 (7th Cir. 2016) (Sykes, J.) ("The Supreme Court recently clarified that a statute is considered divisible only if it creates multiple offenses by setting forth alternative elements.").

offense lacks. But a plain reading of the New York statute demonstrates that the offense is committed when a person both *knows* that the writing contains a falsehood and offers it "*with intent to defraud.*" Thus, the elements of offering a false instrument for filing in the first degree satisfy the statutory definition of a felony under Georgia law.[28]

Nevertheless, Sambou further argues that in addition to the previous offense constituting a felony, it also must have entailed some period of confinement in order for OCGA § 17-10-7 (a) to apply,[29] and here following his guilty plea for offering a false instrument for filing in the first degree, he was merely fined $300. But this argument is belied by the fact that the New York records demonstrate that in addition to the fine, the court sentenced him to "imprisonment = time served," indicating that

---

[28] *See Nordahl*, 306 Ga. at 23 (3) (explaining that in applying the "formal categorical" approach to recidivist sentencing, "the sentencing court lines up [the out of state] crime's elements alongside those of the [state] offense and sees if they match." (punctuation omitted)).

[29] *See State v. Yohman*, 348 Ga. App. 378, 381-82 (1) (823 SE2d 57) (2019) (noting that applicability of OCGA § 17-10-7 (a) required a defendant to have previously been sentenced to confinement for the prior felony offense).

he was, in fact, confined at some point. Accordingly, the trial court did not err in sentencing Sambou as a recidivist under OCGA § 17-10-7 (a).[30]

3. Sambou further contends that the trial court erred in failing to apply the rule of lenity by sentencing him for the felony of identity fraud rather than the misdemeanor of giving a false name to a law enforcement officer. Yet again, we disagree.

The Supreme Court of the United States has referred to the rule of lenity "as a sort of junior version of the vagueness doctrine," which requires fair warning as to what conduct is proscribed.[31] And as this Court has previously explained, the rule of lenity "ensures that if and when an ambiguity exists in one or more statutes, such that the law exacts varying degrees of punishment for the same offense, the ambiguity will

---

[30] *See id.* (holding that recidivist punishment statute's (OCGA § 17-10-7 (a)) requirement that defendant had previously been sentenced to confinement for felony offense was satisfied by seven-year sentence under which defendant served 15 weekends in confinement and remainder of sentence was served on probation as statute did not mandate that entire sentence be served in confinement).

[31] *United States v. Lanier* 520 U.S. 259, 266 (II) (117 SCt 1219, 137 LE2d 432) (1997) (punctuation omitted); *accord McNair v. State*, 293 Ga. 282, 283 (745 SE2d 646) (2013).

be resolved in favor of a defendant, who will then receive the lesser punishment."[32] But the rule of lenity comes into play "only to resolve ambiguities that remain after applying all other tools of statutory construction."[33]

OCGA § 16-9-121 (a) (1) provides that "[a] person commits the offense of identity fraud when he or she willfully and fraudulently . . . without authorization or consent, uses or possesses with intent to fraudulently use identifying information concerning a person. . . ." In contrast, giving a false name to a law enforcement officer is defined by OCGA § 16-10-25, which provides: "[a] person who gives a false name, address, or date of birth to a law enforcement officer in the lawful discharge of his official duties with the intent of misleading the officer as to his identity or birthdate is guilty of a misdemeanor."

---

[32] *Gordon v. State*, 334 Ga. App. 633, 634 (780 SE2d 376) (2015) (punctuation omitted); *see McNair v. State*, 293 Ga. 282, 283 (745 SE2d 646) (2013) (noting that the rule of lenity provides that statutory ambiguity is resolved in favor of the defendant, who will then receive the lesser punishment); *Issa v. State*, 340 Ga. App. 327, 341 (7) (796 SE2d 725) (2017) (same); *Mathis v. State*, 336 Ga. App. 257, 260 (784 SE2d 98) (2016) (same).

[33] *State v. Nankervis*, 295 Ga. 406, 409 (2) (761 SE2d 1) (2014) (punctuation omitted); *see Woods v. State*, 279 Ga. 28, 31 (3) (608 SE2d 631) (2005) (holding that when a crime is penalized by a special law, the general provisions of the penal code are not applicable); *McWhorter v. State*, 275 Ga. App. 624, 629 (2) (621 SE2d 571) (2005) (same).

Sambou's argument notwithstanding, the two statutes are not coextensive. Identity fraud requires the intentional fraudulent use of, or possession with intent to use, some sort of identifying information of another person without that person's consent. But giving a false name is both broader and narrower than the offense of identity fraud.[34] Specifically, "[i]t is broader in that it covers any 'giving' of a false name, which includes both oral and written forms of a false name."[35] But it is "narrower in that the name must be given to a law enforcement officer in the lawful discharge of his official duties . . . ."[36] Importantly, while these offenses "may share common elements, each offense has elements that are not included in the other."[37] And here, the State charged Sambou with identity fraud by alleging that he "without authorization and consent, did willfully and fraudulently, use identifying information of Moustapha Ndiaye, to wit: said accused used victim's name during a traffic stop . . . ." The State was required, then, to prove that Sambou fraudulently used Ndiaye's

---

[34] *See Quaweay v. State*, 274 Ga. App. 657, 658 (618 SE2d 707) (2005) (explaining that giving a false name is both broader and narrower than the crime of forgery).

[35] *Id.* (punctuation omitted).

[36] *Id.* (punctuation omitted).

[37] *Id.*

22

identifying information without his consent, neither of which would have been required to prove giving a false name to a law enforcement officer. Accordingly, the trial court did not err by declining to apply the rule of lenity.[38]

4. Finally, Sambou contends that the trial court erred in denying his claim that his counsel rendered ineffective assistance by failing to object to testimony that constituted hearsay and violated his Sixth Amendment right to confrontation.[39] Once again, we disagree.

To evaluate Sambou's claim of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*,[40] which requires him to show that his trial counsel's performance was "deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for

---

[38] *Cf. id.* (holding that rule of lenity did not apply to reduce defendant's convictions for felony first-degree forgery to misdemeanors of giving false name to law enforcement officer, even though defendant had signed driver's license and signed four documents with false name that he provided to officer because prosecution required different evidence to prove giving false name and forgery).

[39] *See* U.S. CONST. AMEND. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."); *see also* GA. CONST. ART. 1, § 1, ¶ XIV ("Every person charged with an offense against the laws of this state . . . shall be confronted with the witnesses testifying against such person.").

[40] 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

counsel's errors, the outcome of the trial would have been different."[41] Importantly, should a defendant "fail to meet his burden on one prong of this two-prong test, we need not review the other prong."[42] In addition, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption.[43] In fact, the reasonableness of counsel's conduct is "examined from counsel's perspective at the time of trial and under the particular circumstances of the case[.]"[44] And decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if "they were so patently unreasonable that no competent attorney would have followed such a course."[45] Moreover, unless clearly erroneous, this Court will

---

[41] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see Strickland*, 466 U.S. at 687 (III); *Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012).

[42] *McAllister v. State*, 351 Ga. App. 76, 93 (6) (830 SE2d 443) (2019); *accord Gomez v. State*, 300 Ga. 571, 573 (797 SE2d 478) (2017).

[43] *Chapman*, 273 Ga. at 350 (2); *see Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

[44] *Lockhart v. State*, 298 Ga. 384, 385 (2) (782 SE2d 245) (2016).

[45] *Id.*

24

"uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed *de novo*."[46]

Here, prior to trial, the State filed a notice of intent to present evidence of prior bad acts, under Rule 404 (b),[47] which consisted of similar crimes in New York, including the felony offense of offering a false instrument for filing in the first degree. And following a hearing, the trial court ruled the evidence admissible. Then, at trial, the State called an investigator with the New York Department of Motor Vehicles as a witness, who testified as to Sambou's prior bad acts. Specifically, the investigator testified that in 2014, Sambou used a work acquaintance's identification to purchase a vehicle and that the dealership, in fact, had records indicating the

---

[46] *Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014); *accord Duncan v. State*, 346 Ga. App. 777, 783 (2) (815 SE2d 294) (2018); *see Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014) (holding that "[i]n reviewing a claim of ineffective assistance, we give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but we review a trial court's legal conclusions de novo").

[47] *See* OCGA § 24-4-404 (b) ("Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .").

25

purchased vehicle was registered to the acquaintance. The investigator added—with

no objection from Sambou's trial counsel—that during an interview, the acquaintance

explained that he did not give Sambou permission to use his identification. Next, the

investigator testified regarding another incident, in which Sambou used his brother's

identifying information to create a fraudulent driver's license for himself. And as was

the case with the first victim, the investigator testified—again without objection—that

Sambou's brother similarly asserted in an interview that he had not given Sambou

permission to use his identification.

At the hearing on his motion for new trial, Sambou's current counsel

questioned trial counsel as to why he failed to object to the above-referenced

evidence, particularly the investigator's testimony regarding what the New York

victims told him. Trial counsel responded that he believed his initial objection to the

State's request to present prior bad acts evidence preserved this challenge. But on

appeal, Sambou argues his trial counsel rendered ineffective assistance by failing to

object to the New York investigator's testimony, which he alleges constituted hearsay

and violated his Confrontation Clause rights.[48] He further contends that trial counsel's

_____

[48] *See generally Jones v. State*, 350 Ga. App. 618, 625-26 (3) (a) (829 SE2d 820) (2019) (holding that trial counsel's failure to object to investigator's testimony on basis that it violated defendant's confrontation clause right was deficient

26

explanation for this failure demonstrates counsel's inability to distinguish between challenging the 404 (b) evidence generally and the impermissible manner in which the investigator conveyed that evidence at trial, rather than any cogent litigation strategy.

But setting aside whether trial counsel's failure to object constituted deficient performance, Sambou has not shown "that counsel's errors were so serious that they likely affected the outcome of the trial."[49] Indeed, satisfaction of this test is "a difficult endeavor."[50] And simply because a defendant has shown that his trial counsel performed deficiently "does not lead to an automatic conclusion that [he] was prejudiced by counsel's deficient performance."[51] Indeed, the State presented evidence that a Powder Springs police officer stopped Sambou for a traffic violation and that Sambou provided the officer with identification indicting that he was

---

performance).

[49] *Brown v. State*, 307 Ga. 24, 33 (6) (834 SE2d 40) (2019) (punctuation omitted); *accord Jones v. State*, 305 Ga. 750, 755 (4) (827 SE2d 879) (2019).

[50] *Brown*, 307 Ga. at 33 (6) (punctuation omitted); *accord Davis v. State*, 306 Ga. 140, 144 (3) (829 SE2d 321) (2019).

[51] *Brown*, 307 Ga. at 33 (6) (punctuation omitted); *accord Davis*, 306 Ga. at 144 (3).

Moustapha Ndiaye. Furthermore, Ndiaye testified that he knew Sambou and that he provided him with copies of his driver's license and other documents so that Sambou could assist him in obtaining a taxi driver's license. And in addition to identifying Sambou as the person depicted in the video from the body cam of the police officer who initiated the traffic stop, Ndiaye also testified that he did not give Sambou permission to use his driver's license in such a manner. Given these circumstances, the evidence supporting Sambou's convictions was quite substantial, and, therefore, he has failed to demonstrate a reasonable probability that, but for his counsel's alleged deficiency, the trial would have resulted in a different outcome.[52] Accordingly, the trial court did not err in denying his claim of ineffective assistance of counsel.

---

[52] *Newman v. State*, 309 Ga. 171, 183-84 (2) (i) (844 SE2d 775) (2020) (concluding that even if trial counsel rendered deficient performance in failing to object to defendant's three prior convictions, in light of overwhelming evidence of guilt, defendant could not show prejudice); *Brown*, 307 Ga. at 33 (6) (a) (holding that even if trial counsel performed deficiently by failing to object when investigator's testimony amounted to improper character evidence, defendant failed to prove requisite prejudice for claim of ineffective assistance of counsel, given overwhelming evidence of defendant's guilt); *Scales v. State*, 356 Ga. App. 164, 167-68 (2) (a) (846 SE2d 418) (2020) (finding that, given overwhelming evidence, any error by defense counsel in failing to object to the State improperly placing defendant's character into evidence did not prejudice defendant, and thus, could not amount to ineffective assistance).

For all these reasons, we affirm Sambou's convictions and the denial of his motion for new trial.

*Judgment affirmed. Rickman, P. J., and Brown, J., concur*.